Finley *v.* Glenn et ux., Appellants.

132

Argued January 13, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*James L. Rankin,* of *Geary & Rankin,* for appellants. —Appellants are not to be visited with constructive notice of the provisions of the Finley deed affecting appellee's land and not covering any portion of appellants' lands: O'Neill v. Lex, 9 Pa. D. & C. 149.

The purchaser is not bound to carry in his recollection those parts of a deed which have no relation to the particular purchase he was then about to make, nor to take notice of more of the deed than affected his then pur-

chase: Barlow v. Beall, 20 Pa. 178; Maul v. Rider, 59 Pa. 167; Pyles v. Brown, 189 Pa. 164.

*Harold L. Ervin,* with him *Arthur L. Reeser,* of *Lutz, Ervin, Reeser & Fronefield,* for appellee.—It is clear from the language of plaintiff's deed that it was the intention of the grantors and the grantee that all of the lots on Mildred Avenue should be restricted to dwelling house purposes. A deed is to be construed by considering the "circumstances under which it was made for the purpose of ascertaining the intention of the parties": Meigs v. Lewis, 164 Pa. 597; DeSanno v. Earle, 273 Pa. 265.

Equity regards that as done which ought to be done; equity will treat the covenant of the grantor that he would impose like restrictions on his remaining lots on Mildred Avenue as having imposed such restrictions; good faith requires that what is agreed on should be done.

In equity the test by which to determine whether a covenant in a deed runs with the land is the intention of the parties: Landell v. Hamilton, 175 Pa. 327.

Defendants had constructive notice: Bellas v. McCarty, 10 Watts 13; Russell's App., 15 Pa. 319; Knouff v. Thompson, 16 Pa. 357; Pyles v. Brown, 189 Pa. 164; Maul v. Rider, 59 Pa. 168; Jaques v. Weeks, 7 Watts 261; Bodine v. Wayne T. & T. Co., 33 Pa. Superior Ct. 68; Scott v. Burton, 2 Ashmead 312.

The weight of authority holds subsequent purchaser charged with notice of common grantor's covenant in prior deed: Boggs v. Varner, 6 W. & S. 469.

OPINION BY MR. JUSTICE SCHAFFER, March 16, 1931:

A bill in equity was filed by plaintiff seeking an injunction requiring defendants to observe certain restrictions created by the predecessor in title of both of the parties as to the kind of buildings to be erected on their property. The court decreed that an injunction should

issue restraining defendants from using the premises for any purpose other than the erection and maintenance of dwelling houses and from using the buildings as erected for any purpose except as houses for dwelling purposes.

Mildred D. Rosekrans owned a tract of ground which had been divided into building lots. By deed dated March 16, 1926, and recorded April 13th of the same year, she and her husband conveyed three of the lots, with a dwelling house erected thereon, on the westerly side of Mildred Avenue to plaintiff Finley. Building restrictions, limiting the use of the property to dwelling house purposes, and providing that no factory or other building to be used or occupied for any commercial purpose whatsoever should be erected upon the lots were contained in the deed, and, in addition, a covenant in which it was agreed between the grantors and the grantee "their respective heirs and assigns, that the said grantors, shall and will impose the same building restrictions as above set forth, upon all their other lots or pieces of land fronting upon both sides of Mildred Avenue as shown upon the above mentioned plan of lots, ......it is mutually understood that the above restrictions are not to apply to or bind any other land of the said grantors excepting the above mentioned lots of ground abutting on both sides of Mildred Avenue, being lots Nos. 7 and 10 to 19, inclusive on the west side of Mildred Avenue; and Nos. 20 to 29 inclusive, and No. 6 on the east side of Mildred Avenue." Subsequently on August 17, 1926, Rosekrans and his wife conveyed to defendant Joseph Glenn, lots Nos. 20 to 27 inclusive on the east side of Mildred Avenue. No restrictions were imposed by this deed. A few days later by deed to themselves, defendants created a tenancy by entireties.

At the time defendants acquired title they had no actual knowledge of the building restrictions covenanted to be imposed by their grantors on the lots they had purchased. About six months thereafter, however, they

learned of their existence and in June, 1928, when plaintiff was informed that they planned the erection of a factory on the lots opposite his dwelling, a notice in writing, referring to the restrictions and warning defendants against their violation, was sent to them and they acknowledged receipt. In July, 1928, defendants started the work of erecting a building for the manufacture of leather belting on the property conveyed to them and plaintiff began this proceeding. Notwithstanding its pendency, defendants proceeded with the erection of the factory.

The chancellor who heard the case, Judge MacDade, dismissed the bill. On exceptions to his finding and decree, the president of the court, Judge Fronefield, disagreed with the chancellor's view, and in an opinion stated his conclusion to be that an injunction should issue restraining defendants from using their property for any purpose whatsoever excepting the erection and maintenance of houses for dwelling purposes and from erecting or maintaining a factory or other building thereon to be used or occupied for any commercial purpose whatsoever. Owing to the difference in opinion, Judge Biddle, of the Ninth Judicial District, was called in, who coincided in view with President Judge Fronefield, stating, however, that he would restrain the injunction to the use to be made of the building and not extend it to an order for removal thereof. The decree as finally entered was in this form. We are of opinion that the conclusion reached by the two last named judges is the correct one and that of Judge MacDade untenable.

The controlling factor in the decision of the case is that the immediate grantors of both plaintiff and defendants were the same. When the latter came to examine the title which was tendered to them, it was of primary consequence that they should know whether their grantors held title to the land which they were to convey. They could determine that question only by searching the records for grants from them. "The rule

has always been that the grantee......must search for conveyances......made by any one who has held the title": Pyles v. Brown, 189 Pa. 164, 168. "The weight of authority is to the effect that if a deed or a contract for the conveyance of one parcel of land, with a covenant or easement affecting another parcel of land owned by the same grantor, is duly recorded, the record is constructive notice to a subsequent purchaser of the latter parcel. The rule is based generally upon the principle that a grantee is chargeable with notice of everything affecting his title which could be discovered by an examination of the records of the deeds or other muniments of title of his grantor": 16 Amer. Law Rep. 1013, and cases cited; 2 Tiffany's Real Property, 1920 edition, page 2188. So doing defendants would find the deed from Rosekrans and his wife to plaintiff which had been recorded. Coming upon this conveyance, it was their duty to read it, not, as argued by appellant and decided by the chancellor who heard the case, to read only the description of the property to see what was conveyed, but to read the deed in its entirety, to note anything else which might be set forth in it. The deed was notice to them of all it contained; otherwise the purpose of the recording acts would be frustrated. If they had read all of it, they would have discovered that the lots which their vendors were about to convey to them had been subjected to the building restriction which the deed disclosed. It boots nothing, so far as notice is concerned, that they did not acquaint themselves with the entire contents of the deed. It affected them to the same extent as though they had read it all. This is the rule of all our cases and the express declaration of the Recording Act. Were it otherwise, in the familiar instance where a grantor creates an easement on other property owned by him in favor of his grantee, the easement would not be effective against subsequent purchasers of the retained property.

Appellants argue that the covenant by Rosekrans and wife in the deed to plaintiff was a mere personal one, to do something in the future, to restrict the lots which they might sell. To this we cannot assent. Their covenant to impose the restrictions on the other lots stamped it upon them when their deed to plaintiff went of record. They had covenanted by deed and public record that what they would do should run with the other lots. Had appellants read the covenant in plaintiff's deed, they would have seen that it not only bound the grantors, but their assigns, which appellants are. "In equity the test by which to determine whether a covenant in a deed runs with the land is the intention of the parties. To ascertain the intention, resort must be had to the words of the covenant read in the light of the surroundings of the parties and the subject of the grant": Landell v. Hamilton, 175 Pa. 327, 333. The language of the covenant and the intention of the parties as manifested by the transaction in which they were engaged, the conveyance by Rosekrans to plaintiff, impressed with a restriction that the land must be devoted to dwelling house uses and that no factory or other building to be used for any commercial purpose should be erected or maintained thereon, was of no value to plaintiff if a factory could thereafter be erected across the street from him, nor was there any purpose to be served in restricting plaintiff's land to dwelling house uses if factories could be built on the property on the other side of the street. The grantors intended to bind the land covered by the covenant because they recited in it that the restrictions are not to "bind" any other land belonging to them. Plaintiff not only purchased the land but also the right to limit the character of building to be erected on the opposite side of the street.

The Recording Act of May 19, 1893, P. L. 108, provides, "all deeds and conveyances, which, from and after the passage of this act, shall be made and executed within this Commonwealth of *or concerning* any lands,

tenements or hereditaments in this Commonwealth, *or whereby the title* to the same may be *in any way affected* in law or equity......shall be recorded." The purpose in recording is to give notice and the notice given is not only of the land conveyed but "concerning" any lands. Certainly a restriction concerns the lands restricted. But in addition to this, recording is required so that notice may be given of anything "whereby the title may be in any manner affected" and manifestly it would be by restrictions placed on it. So not only by actual conveyance of the land they were purchasing would defendants be affected by the recording of a deed from their vendors but by anything placed of record "concerning" it or "whereby the title" to it might be affected. The record of a deed is notice of the existence of an equitable title or of an easement or servitude on land granted by the owner thereof: Bellas v. McCarthy, 10 Watts 13. When plaintiff, the first grantee, recorded his deed, he did all that he could do to give notice of the restrictions. "The party who has placed his written title on record has given the notice which every person is bound to know and respect. The law does not require him to go further": Knouff v. Thompson, 16 Pa. 357, 364. The record of a deed is constructive notice of its contents to those who are bound to search for it: Maul v. Rider, 59 Pa. 167. "Notice of a deed is notice of its contents": Jaques v. Weeks, 7 Watts 261, 267; 4 Kent's Com. 179; 2 Pomeroy's Eq. Juris., section 655.

We do not see how defendants can complain of hardship to them in the decree. They had actual notice of the restriction six months after they acquired title and more than a year before they commenced building the factory. They also had written notice from plaintiff's attorney before they began building. They erected it with full knowledge that they were transgressing the covenant of their grantor which was equally binding upon them as upon him, as they were his "assigns."

The decree is affirmed at appellant's cost.