**HALLET et al. v. SUMPTER.**

No. A-7719.

District Court, Alaska. Third Division, Anchorage.

Aug. 30, 1952.

Harold J. Butcher, Anchorage, Alaska, for plaintiff.

Edward V. Davis, Anchorage, Alaska, for defendant.

FOLTA, District Judge.

Plaintiffs seek to enjoin the defendant from constructing and operating, or allowing to be maintained, a trailer court on his property, on the ground that such use of the property is prohibited by certain restrictive covenants.

Lintner and Robison, the common grantors of the plaintiffs and the defendant, own what is known as the "Lintner Subdivision" containing some forty lots, laid out to form a residential area. A plot of the subdivision was recorded in the office of the Recorder for the Anchorage Recording District on November 14, 1949, but it is devoid of any reference to restrictions. In April, 1950, a document, setting forth the restrictions, was recorded but, not having been witnessed or acknowledged, it was not entitled to recordation, Secs. 18-1-3, 22-3-9, A.C.L.A., 1949, and, hence, is insufficient to constitute constructive notice. This document, plaintiff's exhibit No. 1, is as follows:

Restrictions on Lintner Subdivision.

That certain property located in the Southwest Quarter (SW¼) of Section Twenty-five (25) Township Thirteen North (T13N), Range Four West (R4W), S.M., according to the plat drawn by H. V. Lounsbury which has been recorded in the office of the Recorder, Anchorage Recording Precinct, shall be subject to the following restrictions which shall be binding, upon filing with the Recorder, Anchorage Recording Precinct, upon the owners of the property of the Subdivision, and all purchasers of lots therein, and on all subsequent purchasers, assigns, heirs, and representatives of the owners or purchasers it being intended that these restrictions shall run with the land and be binding as covenants upon all owners of the land enforceable in law or at equity:

(a) That no lot shall be subdivided into smaller lots than shown on the original plat.

(b) That no permanent building shall be erected upon any lot nearer than 20 feet from the front lot line nor within 5 feet of either side lot line, nor within 10 feet of the rear line, provided that if there is an existing alley in use in the rear of said property a private garage may be placed within said prohibited area, nor shall any dwelling house erected upon the above described real property be of a value less than $5,000, the $5,000 value being based upon construction costs as of June 1, 1950, and providing that should any business building be erected on lots herein designated as either business or residential lots which building is located on more than one lot, then the requirement that buildings shall not be located within

5 feet of lot line shall apply only to the outer limit of such building and it shall be permissible for such building to be located on .or across a lot line.

· (c) That no noxious or offensive trade or business shall be carried on upon any lot, nor shall anything be done thereon which shall be or become an annoyance to the neighborhood.

(d) Lots number one through fourteen, facing Spenard Road are hereby designated as either business or residential lots. No Business shall be conducted on lots Numbered 15 through 40. PJR

(e) No more than one dwelling building, either single family or duplex, shall be constructed on any lot.

(f) No quonset hut shall be erected on the lot, nor shall any house trailer be parked thereon, provided, however, that the purchaser may park a house trailer, or erect a temporary building on the premises for temporary living quarters with the express written permission of the seller.

(g) That all buildings, or additions to buildings within six months of their erection be covered on the outside walls with a finishing other than that of tar paper, cellotex or other similar coverings.

(h) The location of any septic tank, cesspool or seepage pool on the premises shall be first approved by the Sanitarian of the Territorial Department of Health.

(i) That no house or portion thereof shall be commenced which has less than four hundred (400) square feet in floor space area.

The owners placed the sale of the lots into the hands of two realtors but reserved the right to sell seven unspecified lots. They also exchanged powers-of-attorney so that each could act for the other in his absence. Of the 24 deeds and contracts of sale which were recorded at the time of the trial, 14 contained references to the restrictions, and 10 do not. All the deeds are in the form of warranty deeds.

On March 1, 1951, the defendant, hearing that the corporate limits of Anchorage might be extended to include his night club, bought lots 1 and 2, with the intent of moving his night club thereto to avoid police regulation. The anticipated extension though, perhaps inevitable, did not take place, and so it appears that it occurred to the defendant to put in a trailer court in the meantime which would not only yield an income, but which could also be readily converted into a night club or other business at a minimum of expense.

The defendant was given a warranty deed, without any reference to restrictions, and he asserts he had no actual notice thereof and that he did not make a title search. The plaintiffs contend that he not only had actual notice, but also constructive notice by virtue of the rule that one is chargeable with what a title search will disclose.

There was a sharp conflict of evidence. In finding that the defendant was apprised of the restriction, I am influenced somewhat by the failure of the defendant to produce Lintner as a witness. From the testimony of the defendant in regard to his negotiations with Lintner for the purchase of these lots, involving also the purchase of a mink coat, it appears that they were so friendly and that defendant had such implicit confidence in him that he did not make any title search. In these circumstances it was the duty of the defendant to produce Lintner as a corroborative witness, and his failure to do so or to satisfactorily explain his absence, warrants the inference that his testimony would not have corroborated that of the defendant.

■ The deeds to the plaintiffs were made prior to the conveyance to the defendant, were properly recorded and some of them incorporated the restrictions by reference. Since the defendant is charged with notice of the conveyances made by his grantors and the instruments referred to therein, he is by the same token charged with constructive notice of the covenant document. 5 Tiffany on Real Property, Secs. 1266, 1293. Had he examined the chain of title, he would readily have discovered the restrictions. Finley v. Glenn, 303 Pa. 131, 154 A. 299.

I find from the evidence, therefore, that the defendant had actual and constructive notice of the restrictions.

The remaining question is whether the defendant has violated any of the covenants.

Defendant purchased lots numbered 1 and 2, which are denominated "either business or residential" in the covenant document. Although covenants which restrict the use of real property are to be so construed as to resolve doubts or ambiguities against their extension, in order that land as a whole will remain free and unencumbered, a fair reading of the entire instrument leads to the conclusion that the defendant has acted in contravention of its terms. The intention was to reserve this entire subdivision for residential use, with the exception of the fourteen lots which could be used for business or residential purposes. Restrictions (c), (e) and (f) are, therefore, directly involved in the case at bar.

It is not necessary to find that the operation of a trailer court in this residential area is a "noxious or offensive trade or business" although under the circumstances it may well be classified as such, Cf. Simons v. Mutual Construction Co., 132 App.Div. 719, 117 N.Y.S. 567; Todd v. Sablosky, 339 Pa. 504, 15 A.2d 677, 132 A.L.R. 282; for clearly it is an "annoyance to the neighborhood", resulting in a depreciation of property values and generally making the subdivision a less desirable place to live. Moreover, covenant (e) is directly violated, since there is "more than one dwelling building" on each of the lots owned by the defendant.

While covenant (f) does not differentiate between the purely residential lots and those which may be used for both business and residential purposes, when read in conjunction with the rest of the covenants, the provision prohibiting house trailers, except as temporary living quarters for the owner of the lot, would seem to be directed at all of the lots in the subdivision whether used for business or not.

I conclude, therefore, that lots 1 and 2 owned by the defendant are subject to the restrictive covenants; that their use as a trailer court location contravenes said covenants, and that the defendant should be restrained and enjoined from constructing or maintaining or permitting to be maintained a trailer court on lots 1 and 2.

An attorney's fee of $600 is allowed.