369 A.2d 883

**Stephen CLANCY et al., by Robert Buckingham and Joanne Buckingham, his wife, Appellees,**

**v.**

**William L. RECKER and High View Mobile Park, Inc., Appellants.**

Superior Court of Pennsylvania.

Argued Nov. 24, 1975.

Decided Feb. 18, 1977.

Robert Rade Stone, Pittsburgh, for appellant.

Samuel S. Pangburn, Washington, for appellee.

Before WATKINS, President Judge and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

WATKINS, President Judge:

This is an appeal from the order of the Court of Common Pleas of Washington County sitting in equity by the appellant-defendant, William L. Recker, co-executor, a grantee and son of the common grantor and High View Mobile Park, Inc., dismissing the exceptions filed by the appellees to a decree nisi and from the final decree enjoining the appellees from the use of certain land in violation of certain restrictive covenants.

The case originally began on June 5, 1972, in a complaint in equity. The plaintiff-grantees of certain property attempted to enjoin the defendant based on an implied negative restricted covenant. The Chancellor dismissed the complaint and one of the plaintiffs appealed to the Supreme Court.

The Supreme Court, 455 Pa. 452, 316 A.2d 898, speaking through Mr. Justice Eagen succinctly stated the facts of the case and the issues involved in the appeal as follows:

"On April 4, 1955, William F. Recker and Madeline Recker, his wife became the owners in fee of a 155 acre tract of land in Union Township. Between 1956 and 1962, William F. Recker and Madeline Recker made eleven separate conveyances out of this 155 acre tract. The appellants were the grantees in one such conveyance. Each deed in these conveyances granted

title to the grantees therein to a lot or lots of land subject to certain 'covenants, conditions and restrictions' which were designated as 'covenants running with the land'. One such covenant provided '[n]ot more than one dwelling house shall be constructed on each lot as shown on the plan.' Another provided that the construction plans for each dwelling house and septic tank installation were subject to the approval of the grantors prior to construction. In addition, each deed included the following restrictions dealing with trailers:

'No trailer, basement, tent, shack, garage, or any outbuilding other than a dwelling house approved as herein provided erected thereon shall at any time be used as a residence.'

Further, all but two of the eleven deeds contained the following prohibition:

'No trailer shall be placed, or parked on the above described land for use of occupancy as a dwelling house or for any other purpose whatever.'

"William F. Recker died testate on April 10, 1969, and by his last will and testament he devised the remaining portion of the 155 acre tract [approximately 148 acres] to his seven surviving children, one of whom was the defendant, William L. Recker. In February 1971, William L. Recker submitted a mobile home trailer park site plan, 'Recker-Walton, Mobile Home Trailer Park', to the Planning Commission and the Board of Supervisors of Union Township for approval. The trailer park was to be constructed on the 148 acre tract devised under the will of William F. Recker, deceased. In November 1971, the plan for construction of the park was approved by the township's Planning Commission and Board of Supervisors. On May 1, 1972, the township's Zoning Board of Adjustment issued the necessary building permit. On May 30th, title to the 148 acre tract was purchased by High View Mobile Park, Inc. [High View] for $65,000.

William L. Recker owns one-third of the stock in this corporation and serves as its secretary-treasurer. The instant action was instituted on June 5th.

"The appellants maintain the entire 155 acre tract from which their lot was carved is bound by the 'covenants, conditions and restrictions' included in their deed, particularly, the restriction against use of the land for trailers. Admittedly the appellants' deed and the other deeds executed by William F. Recker and Madeline Recker making conveyances out of the 155 acre tract did not expressly subject the entire tract to these restrictions; however, it is urged this was the manifest intention of the grantors as evidence by the circumstances surrounding the eleven conveyances. In essence, appellants assert the existence of a reciprocal negative easement."

The Supreme Court held as follows:

"As we view it, the crux of this case lies in the trial testimony of the appellant, Buckingham and the other trial witnesses who purchased lots from William F. Recker and Madeline Recker, and for present purposes the important issue is the competency of this testimony. The appellees contend this testimony was incompetent in toto as violative of both the Parol Evidence Rule and the Dead Man's Statute. Admission of a substantial portion thereof would violate the Parol Evidence Rule, but, by the same token, there is an important part of this testimony which is not restricted by either cited rule.

"Under the Parol Evidence Rule, the law is well settled that when the terms of a written instrument are clear and incontrovertible, parol or extrinsic evidence is not admissible to explain the intent of the contracting parties. *Factor v. Getz,* 442 Pa. 384, 276 A.2d 511 (1971). However, such evidence is admissible to prove the intent of the parties when the written instrument is vague and ambiguous. *Factor v. Getz,* su-

pra, and *Scholler Trust,* 403 Pa. 97, 169 A.2d 554 (1961). Instantly as noted previously, the deeds to the plaintiffs from William F. Recker and Madeline Recker included in part a covenant, '[n]ot more than one dwelling house shall be constructed on each lot *as shown on the plan.'* [Emphasis added.] This 'plan' was not recorded and the deeds do not explain it. Hence, the deeds are ambiguous as to the identity and the extent of the land this plan encompassed, and thus, parol testimony may be introduced. If the grantors intended and referred to the Provost plan, then the building lots outlined therein and only those lots would be included in the general plan of development intended by the grantors, and, as such, would be subject to the restrictions intended for all of the land included within the development plan. Assuming High View is an innocent purchaser for value, the deeds to the plaintiffs which were a matter of public record would constitute constructive notice that some development plan with building restrictions existed and was intended by the owners. Cf. *Finley v. Glenn,* 303 Pa. 131, 154 A. 299 (1931).

"Since the credibility of the testimony, as to what portion of the 155 acre tract was encompassed by the grantors' development plan is for determination by the chancellor, we remand the record for that purpose. However, we hasten to note this caveat. The deeds were ambiguous only as to the bounds of the development plan intended by the owners of the tract, and, only parol testimony clarifying this facet of the deeds may be considered. Parol testimony concerning oral promises and representations made to the individual purchasers which concern matters other than the scope and identity of the plan would clearly constitute an attempt to vary or add to the contents of the deeds, and, as such, are violative of the Parol Evidence Rule.

"Moreover, parol testimony clarifying the development plan intended by the owners of the tract would

not violate the Dead Man's Statute. High View did not acquire its title in the 148 acres as a result of the decedent's 'own act' or by an 'act of law.' It acquired its interest through a conveyance by the Recker heirs.

"Additionally, the estate of William F. Recker is not an interested party within the meaning of the Dead Man's Statute, nor, does High View represent in any way the rights of the deceased. A verdict in favor of the appellees would not, in any way, benefit the estate of William F. Recker. It is well established that in order for an adverse interest to disqualify a witness under the Dead Man's Statute, such interest must exist at the time the witness is called. See, *First National Bank of Bloomsburg v. Gerli*, 225 Pa. 256, 74 A. 52 (1909); *Grasso v. John Hancock Mutual Life Insurance Company*, 206 Pa.Super. 562, 214 A.2d 261 (1965). Since, the estate of William F. Recker no longer has an interest in property which it sold to the appellees, the Dead Man's Statute will not prohibit testimony from William F. and Madeline Recker's grantees.

"Decree vacated, and the record is remanded for further proceedings in accordance with this opinion. Costs to be paid in equal parts by the appellants and High View."

The case, therefore, was remanded to the court below for the determination of the credibility of the testimony as to what percent of the 155 acres was encompassed by the grantor's general scheme of development. The testimony determined as credible by the Chancellor revealed that the grantor intended to restrict the entire farm. The issue in relation to the Dead Man's Statute as decided by the Supreme Court is not affected because a party was added rather than substituted.

A careful examination of the testimony of the witnesses determined to be credible by the Chancellor supports his findings of fact. The complaints of the appellant are

without merit as the court below restricted their testimony in strict compliance with the Supreme Court's decision. As the Chancellor said in his Supplemental Adjudication:

"Pursuant to the Supreme Court's ruling, at the rehearing, the chancellor permitted only that parol testimony which went to the issue of the 'bounds of the development plan intended by the owners of the tract.' "

And the Chancellor further stated:

"As we view this, the only matter left for us to decide by the Supreme Court is 'what portion of the 155 acres was encompassed by the grantor's development plan' and that parol testimony clarifying only this facet of the deeds may be considered. The Supreme Court in its opinion fully discussed and decided all of the other aspects of the case, including the Parol Evidence Rule and the applicability of the Dead Man's Statute. Accordingly, our duty on this remand is narrowly limited to a determination, i. e., a finding of fact, as to the grantor's intention. As the Supreme Court noted, the question becomes one of credibility and, of course, with the decedent not present to defend himself, the question becomes one of accepting or rejecting the uncontradicted testimony of the plaintiffs and their witnesses. These witnesses were all persons of some standing in their community, and the court was impressed with their obvious candor and truthfulness. Therefore, in the absence of contradictory testimony, and on this state of the record, the court accepts their testimony regarding the scope and identity of the plan as being entirely credible."

Order affirmed.

SPAETH, J., concurs in the result.