## Ehnatko v. Lebda

*Samuel J. Orr,* for plaintiffs.
*Richard A. Faltenovich,* for defendants.

STEEGE, *J.,* September 7, 1988 — This is an action in equity between next-door neighbors. Plaintiffs, Michael Ehnatko and Ann Ehnatko, seek an injunction which would prohibit defendants, Telford J. Lebda and Alice L. Lebda, from constructing a second two-car garage on defendants' lot. The matter was fully tried on June 28, 1988. This adjudication is made and the accompanying

decree nisi is entered pursuant to Pa.R.C.P. no. 1517.

Plaintiffs and defendants live in their respective homes in Conway on adjacent lots on Sampson Street, a residential neighborhood. They have a common grantor, Northern Lights Development Company Inc. (Northern Lights was not defendant's immediate grantor, there having been an intervening owner, but that is not material for our purposes.) Plaintiffs contend that a restriction prohibiting the erection of a second garage, which appears in plaintiffs' deed and in the deeds of several but not all of their neighbors, should be imposed by operation of law upon the defendants, even though defendants' deed (and the deed into their predecessors in title) contains no such restriction.

Much of the evidence in the case consists of matters already of record, is undisputed, and was set forth in a stipulation agreed to by both counsel. There was some additional testimony. From all the evidence, we make the following findings of fact:

(1) On May 6, 1903, the Remington-Conway Improvement Co. recorded its plan no. II in Plan Book Volume 1, page 222.

(2) By deed dated July 31, 1957, and recorded in Beaver County Deed Book Volume 719, page 162, Guy W. Gully conveyed several unimproved lots in the plan to Northern Lights. (A corrective deed, not material for our purposes, was signed on October 23, 1957 and recorded in Deed Book Volume 722, page 208.)

(3) Northern Lights did not re-subdivide the plan. All of its many subsequent conveyances out of the land purchased from Gully bear legal descriptions which have reference to the streets, lot num-

bers, and courses and distances which appear on the plan.

(4) Beginnning in June 1958, Northern Lights made five conveyances of parcels in the plan as follows:

(a) Theodore W. Marshall et ux. — June 20, 1958, D.B. 734-309

(b) William M. Hrusko — October 24, 1958, D.B. 743-437

(c) Charles Patrick Laughlin et ux. — January 7, 1959, D.B. 748-456

(d) Frank J. Windisch et ux. — February 7, 1959, D.B. 752-65

(e) Joseph Sorg et ux. — April 22, 1959, D.B. 754-345

(5) All of the deeds set forth in paragraph 4 above contain identical deed restrictions, three in number, including the following:

"(2) That no more than one single family dwelling shall be erected on the building site, which may contain as integral therewith, a private garage for one or two automobiles."

(6) By deed dated June 17, 1959 and recorded in Deed Book Volume 760, page 309, Northern Lights conveyed a residential lot to plaintiffs. The plaintiffs' deed contained the same three restrictions which were contained in the five deeds out of Northern Lights which preceded theirs and are set forth in paragraph 4 above, specifically including the restriction to one garage. The plaintiffs' deed also contained two additional restrictions, neither of which is contained in any of the other deeds out of Northern Lights.

(7) Northern Lights followed the conveyance to plaintiffs with three subsequent conveyances out of the plan, as follows:

(a) Margaret C. Vietmeier — August 15, 1959, D.B. 762-311

(b) Alfred Richking et ux. — August 31, 1959, D.B. 763-295

(c) Stanley Jones et ux.— October 11, 1960, D.B. 787-72

Each of these deeds contained the three restrictions found in the five deeds set forth in paragraph 4 above.

(8) By deed dated July 15, 1961 and recorded in Deed Book Volume 787, page 332, Northern Lights conveyed all of lot 301 and part of lot 300 in the plan to Wallace C. Fausti et ux. This deed contained eight restrictions, including the condition that but one garage could be erected on the premises.

(9) By deed dated December 31, 1960, and recorded in Deed Book Volume 791, page 126, Northern Lights conveyed a number of lots in the plan to Frank H. Schroder. This deed contained no restrictions whatever.

(10) Northern Lights then delivered three deeds to Ryan Consruction Inc. as follows:

(a) March 27, 1961          D.B. 795-226
(b) April 18, 1961          D.B. 796-115
(c) August 3, 1961          D.B. 802-133

None of these deeds contained any restrictions.

(11) Northern Lights conveyed another parcel in the plan to Schroeder by deed dated August 9, 1961, and recorded in Deed Book Volume 802, page 146. The deed contained no restricitons.

(12) By deed dated July 15, 1961, and recorded in Deed Book Volume 802, page 151, Northern Lights conveyed to Fausti a parcel immediately adjacent to the parcel had been conveyed to Fausti by the deed which appears in Deed Book Volume 787, page 332. (See paragraph 9, above). This deed contained no restrictions.

56

(13) Fausti had conveyed his initial parcel of land to Schroeder, who had in turn conveyed it to Ryan. In a document joined by Northern Lights, Ryan, Fausti, and Schroeder, the restrictions imposed upon Fausti in the deed which appears in Deed Book Volume 787, page 332 were released.

(14) At least one of the lots which was the subject of the above release of restrictions is immediately behind plaintiffs' and defendants' properties. It currently has three garages constructed upon it.

(15) By deed dated September 13, 1962, and recorded in Deed Book Volume 823, page 155, Northern Lights conveyed a parcel in the plan to Clark H. Hall et ux. This deed contained the same three restrictions found in the five deeds which are set forth in paragraph 4 above.

(16) By deed dated September 20, 1965, and recorded in Deed Book Volume 888, page 200, Northern Lights conveyed a parcel in the plan to Raymond E. Rohrer. The deed contains no restrictions.

(17) By deed dated June 13, 1968, Northern Lights conveyed part of lot 278, all of lot numbered 279 and part of lot numbered 280 in the plan to Henry J. Woodman et ux. The Woodman deed contains no restrictions.

(18) By deed dated July 21, 1987, and recorded in Deed Book Volume 1305, page 145, Dorothy J. Woodman conveyed the Woodman parcel to defendants. Just as there had been no restrictions in the deed from Northern Lights to Woodman, the deed from Dorothy Woodman to defendants contained no restrictions.

(19) None of the Northern Lights deeds which imposed restrictions contained a covenant that Northern Lights would impose similar (or any) restrictions on other properties in the plan which Northern Lights owned.

## DISCUSSION

Plaintiffs concede, as indeed they must, that neither the defendants' deed nor that of their predecessors in title contains any deed restrictions. Plaintiffs assert, however, that since many of the deeds of record from Northern Lights, prior in time to defendants' deed, contained restrictions, there is created by law an "implied reciprocal convenant" which imposes the restrictions on defendants. We disagree, and we shall deny plaintiffs' request for an injunction.

Plaintiffs have misperceived the doctrine of implied reciprocal covenants, which was defined by Mr. Justice (later Chief Justice) Horace Stern (not surprisingly, in a manner which cannot be improved upon), in *Price v. Anderson*, 358 Pa. 209, 56 A.2d 215 (1948), as follows:

"It is true that where there is a definite plan of a real estate development for residential purposes, as shown, for example, by the filing of a map, in pursuance of which numerous conveyances of lots are made containing uniform restrictions, there is presumably created thereby a neighborhood or community scheme that may give rise to an implied reciprocal covenant on the part of the grantor that he will not thereafter convey any part of the original tract without imposing thereon the same restrictions, and that he will not himself devote the remaining part of the property to the prohibited purposes."

Implied reciprocal negative covenants may be imposed upon a grantor who has subdivided a portion of a larger tract, placed restrictions upon the lots in the subdivision, and then attempts to sell or use the balance of the tract free of the restrictions. *Clancy v. Recker*, 455 Pa. 452, 316 A.2d 898 (1974). But that

is not our case. These defendants have not re-subdivided the plan, nor have they ever sold any lots in it subject to restrictions.*

Nor are plaintiffs helped by the Recording Act. If the prior deeds from Northern Lights had contained, in addition to the restrictions, a covenant to impose the restrictions (or similar restrictions) on all of the property in the plan which Northern Lights owned, then defendants would be on notice, and we would impose the restrictions upon them. *Finley v. Glenn*, 303 Pa. 131, 154 Atl. 299 (1931). Here, however, not only has Northern Lights not included such a covenant, it has actually been a party to an instrument of record which releases from the restrictions one of the parcels previously restricted.

Defendants are not bound by any of the restrictions which appear in plaintiffs' deed or in the deeds of various other lot owners in the plan. Plaintiffs are not entitled to injunctive relief. We enter the attached

## DECREE NISI

Plaintiff's request for an injunction which would prohibit defendants from erecting a second two-car garage on defendants' property on Sampson Street in Conway Borough is denied. Plaintffs' complaint is dismissed.

This decree nisi will become a final decree pursuant to Pa.R.C.P. 1501 and 227.1-227.4.

---

*The doctrine of implied reciprocal convenants has been construed by the Superior Court in two recent cases. Implied restrictions were found and applied in *Fey v. Swick,* 308 Pa. Super. 311, 454 A.2d 551 (1982), and rejected in *Burns v. Baumgardner,* 303 Pa. Super. 85, 449 A.2d 590 (1982). See also the adjudication of October 23, 1984, of the Honorable Robert C. Reed, President Judge of this court, in *Duer v. Passerin,* at no. 666 of 1983, Beaver County.