**David R. WOODWARD, Mary H. Woodward, Individually and on behalf of Beth R. Woodward, a Minor, Plaintiffs,**

**v.**

**David W. BOWERS, in his official capacity as Recorder of Deeds of Franklin County, Pennsylvania, Defendants.**

**Civ. No. 85–0830.**

United States District Court,
M.D. Pennsylvania.

March 25, 1986.

David R. Woodward, Chambersburg, Pa., for plaintiffs.

James J. West, U.S. Atty., Harrisburg, Pa., Joan A. Magagna, Housing & Civil Enforcement Section, Dept. of Justice, Washington, D.C., for U.S., amicus curiae.

Charles W. Rubendall, II, Eugene E. Pepinsky, Jr., Keefer, Wood, Allen & Rahal, Harrisburg, Pa., for defendants.

### MEMORANDUM

HERMAN, District Judge.

In cases involving allegations of racial discrimination, parties, their attorneys and in many cases even judges are too ready to let their emotions override their objectivity.

It is wise therefore to avoid the temptation to make sweeping rulings in such a case and to narrowly define the problem before us and to stick closely to sound precedent and to time-honored principles of statutory construction as we proceed.

In this case, we are asked on a motion to dismiss to answer the question of whether a Recorder of Deeds violates the Civil Rights Act of 1968 by accepting for filing a deed that refers to a prior recorded building lot plan that contains a racially restrictive covenant. The facts as alleged in the complaint are as follows. Plaintiffs purchased their house in March, 1982, and received a deed from their grantors containing the restriction:

> Subject, however, to building and other restrictions attached to and made part of the plan of Coldbrook Land Company, Inc., dated *November 1, 1924,* and recorded in Franklin County Deed Book Volume 216, Page 450.

(emphasis supplied). After purchasing their house, plaintiffs filed their deed with the Recorder of Deeds of Franklin County. The Recorder accepted the deed and recorded it at Deed Book Volume 855, page 32.

The restriction contained in plaintiffs' deed refers to the plan of the Coldbrook Land Company, also recorded in the Recorder of Deeds office. This plan contains the provision, among others, that "[n]o lots of the Company shall ever be sold to anyone of negro blood." The gravamen of plaintiffs' complaint in this case is that the actions of the Recorder of Deeds in recording and filing plaintiffs' deed violates Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3604(c), section 1978 of the Civil Rights Act of 1866, 42 U.S.C. § 1982, and the Pennsylvania Human Relations Act, 43 P.S. § 955(h)(5). Accordingly, plaintiffs have asked for several kinds of injunctive and declaratory relief, including an order that the Recorder of Deeds shall "take appropriate steps to ensure that no deed or instrument is recorded, printed or published which, on its face, indicates a preference, limitation or discrimination with respect to the sale or rental of a dwelling or commercial housing based upon race or color." Plaintiffs' Complaint at 8.

The defendant Recorder of Deeds has now filed a motion to dismiss, alleging that plaintiffs have failed to state a cause of action under any of the statutory provisions detailed above.

### I. TITLE VIII CLAIM.

Title VIII of the Civil Rights Act of 1968 is aimed at providing fair housing opportunities for all. Section 804 of that title, 42 U.S.C. § 3604, prohibits discrimination in the sale or rental of housing on the basis of race, color, religion, sex, or national origin. Plaintiffs claim that in accepting their deed for filing, and in recording that deed and others like it, the Recorder of Deeds has violated subsection (c) of Section 804, 42 U.S.C. § 3604(c). That subsection provides, it shall be unlawful—

> . . . . .

> (c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex or national origin, or an intention to make any such preference, limitation, or discrimination.

Plaintiffs argue, on the strength of a District of Columbia Circuit Court of Appeals case, *Mayers v. Ridley,* 465 F.2d 630 (D.C. Cir.1972), that the Recorder's Act of ac-

cepting and recording the plaintiffs' deed amounts to publishing a notice of discrimination, with respect to the sale of a dwelling, based on race.

The *Mayers* case is the only case we have been able to find that addresses the question of whether a Recorder of Deeds violates 42 U.S.C. § 3604(c) when he accepts for filing a deed containing a racially restrictive covenant. In that case, a majority of the en banc Court of Appeals for the District of Columbia decided in two separate concurring opinions that such action is violative of § 3604(c). Two judges dissented from this holding, however, and it is to be noted that the panel of the court that first addressed the issue found no violation of § 3604(c), and neither did the district court. In light of this lack of agreement on the issue, and in light of the sweeping and sometimes inflammatory rhetoric of the two concurring opinions in *Mayers* that make up the majority of the court, we prefer not to blindly accept the holding of the *Mayers* court. Rather, we will examine the issues on our own, with the help of all of the *Mayers* opinions.

The precise issue we must decide, then, is whether the Recorder of Deeds, by accepting deeds such as plaintiffs' for recording, and by making these deeds and the original lot plan available to the public, (1) makes, prints, or publishes, (2) "any notice, statement, or advertisement," (3) "with respect to the sale or rental of a dwelling."

In order to determine whether the Recorder makes, prints, or publishes anything at all, we must first determine what exactly, under Pennsylvania law, the Recorder of Deeds does. Pennsylvania has several statutes that govern the power and duties of the Recorder of Deeds. These statutes require the Recorder to make a record of all deeds brought into his office, listing them in the order in which they were presented to the office. Act of May 28, 1715, Sm.L. 94 § 1, 16 P.S. § 9701; Act of March 18, 1775, 1 Sm.L. 422 § 6, 16 P.S. § 9731. They also require the Recorder to create indices to the record for easy access to the documents recorded therein. Act of March 18, 1875, P.L. 32 § 1, as amended, Act of October 16, 1980, P.L. 986, No. 170, § 1, 16 P.S. § 9851. Finally, these statutes provide for a penalty to be assessed against the Recorder if he "shall neglect or refuse to make ... an entry" in the record immediately upon the Recorder's receipt in his office of a deed. 16 P.S. § 9731, *supra*.

Although the case law interpreting these statutes is sparse, it is clear that the Pennsylvania courts have interpreted the statutes as mandating that the Recorder record all deeds and other statutorily authorized documents that are brought into his office and that are properly acknowledged, regardless of their contents or validity. In Pennsylvania, the Recorder of Deeds is "merely the custodian" of documents placed into the record by members of the public. *County Auditors of McKean County v. Anderson,* 133 Pa.Super. 475, 480, 3 A.2d 28, 30 (1938). The Recorder neither approves of nor rejects the contents of the documents, or their validity. *Albright v. B & G Development Co., Inc.,* 64 D. & C.2d 595, 600–601 (Northumberland 1973) ("the recorder is not responsible for investigating the validity of documents ... Of course, the corollary [of this rule] is that if the defect [in the document] affects rights of private individuals, their rights are not altered by the recording if they know of the actual defects.) In short, the Recorder is a ministerial officer charged with recording all documents presented to him. The only situations in which a Recorder may refuse to record a document presented to him are where the appropriate fee is not paid, where the document is not of the type that is statutorily entitled to recording, *see,* 16 P.S. §§ 9751, 9752, 9755, 9756 and 9759, and where the document *on its face* lacks a proper acknowledgement. The Recorder is truly just a "custodian" of documents.

From the above analysis of the functions of a Recorder of Deeds, we can say with certainty that the Recorder does not "make" any notice or statement at all. The Recorder receives such notices and statements, but is not the author of them.

The harder question is whether the Recorder "prints or publishes" notices or statements with respect to the sale or rental of a dwelling.

The first principle of statutory construction is to always look to the plain meaning of the language itself. In the context of the phrase "[t]o make, print, or publish, or cause to be made, printed, or published," the most obvious meaning of "print" is to perform all the necessary processes connected with the act of producing a book, magazine, newspaper, flier, or the like. The sparse legislative history of 42 U.S.C. § 3604(c) indicates that indeed, this is the meaning Congress most likely had in mind when it drafted the statute. *See* Hearings on S.1358, S.2114 and S.2280 before the Subcommittee on Housing and Urban Affairs, Senate Committee on Banking and Currency, 90th Cong. 1st Sess. at 386, 388 (1967) (George Meany's testimony concerning discriminatory advertisements in newspapers); Hearings on S.1026, S.1318, S.1362, S.1462, H.R. 2516, H.R. 10805 before the Subcommittee on Constitutional Rights of the Senate Committee on the Judiciary, 90th Cong., 1st Sess. 233 (1967), U.S.Code Cong. & Admin.News 1968, p. 1837.

As we have already noted in examining the duties of a Recorder of Deeds, the Recorder does not do anything that is akin to printing or preparing for distribution a magazine, newspaper, or flier. The Recorder merely accepts deeds and other documents, indexes them, and stores a record of them in the order in which they were received. Such acts are those of an archivist rather than those of a printer. The Recorder of Deeds, therefore, does not "print" anything within the meaning of § 3604(c).

Just as the Recorder of Deeds does not print any notices or statements indicating preference or discrimination, neither does he publish any such notices or statements. "To publish," in common parlance, means "to declare publicly: make generally known: Disclose, circulate." Webster's Third New International Dictionary (1967).

The word "publish", as do its synonyms "declare", "disclose", and "announce", carries with it the implication that the one doing the publishing, the publisher or announcer, has some knowledge of and intent to proclaim the words uttered. He intends that people hear his words and that they react to them. This is true of a newspaper publisher, a book publisher, a radio announcer, a television reporter, and even a grantor of a deed containing a racially restrictive covenant. All of these actors "publish" their statements and, at the same time, have knowledge of what they are saying, and an intent to say the same. In short, the act of "publishing" is an active, knowing, and purposeful act.

The process that the Recorder of Deeds goes through in accepting deeds for recording and in placing them in the record is far from active, knowing, and purposeful. The Recorder in Pennsylvania need have no knowledge of the contents of the deeds he receives. Indeed, in this case, even if the Recorder were aware of the language of the deed, he would not be aware, by simply reading it, that it makes reference to a decades-old restrictive covenant that is no longer valid. By placing such deeds in the record, he is not proclaiming or announcing their contents. He has no intent that specific statements ever be read by or that they have an effect on anyone. Rather, he is merely preserving them in such a way that members of the public, should they so choose, may search them out and discover their contents. The Recorder does not know, and does not care what each individual deed says. He has no intent to make specific statements contained in the deed generally known, whether discriminatory or not, nor could he have such intent, for he does not even know of the existence of such statements. The Recorder of Deeds is no more a publisher than is an archivist, a preserver of historic documents. As the Pennsylvania courts have held, the Recorder is purely a ministerial officer, a mere custodian of documents placed into the record, perhaps even published, by members of the public.

Although we have already decided that a Recorder of Deeds neither makes, nor prints, nor publishes the contents of documents received by him, and therefore that § 3604(c) cannot apply to the Recorder, there is a second reason, based on the language of the statute itself, that § 3604(c) cannot and does not apply to the Recorder. The third element of the statutory proscription is that the notice, statement, or advertisement must be "with respect to the sale or rental of a dwelling." Although deeds to real property are typically received after the transfer of ownership of that property, as the division of the D.C. Circuit Court of Appeals held in *Mayers v. Ridley*, "[t]he Recorder does not offer property for sale or rent, nor is he in any way connected with the commercial real estate market." 465 F.2d at 657. The legislative history indicates that by including the phrase "with respect to the sale or rental of a dwelling", Congress intended to reach the activities of "property owners, tract developers, real estate brokers, lending institutions, and all others engaged in the sale, rental, or financing of housing." Hearings on S.3296 before the Subcommittee on Constitutional Rights of the Senate Committee on the Judiciary, 89th Cong., 2d Sess., pt. 1, at 84 (1966) (Attorney General Katzenbach's testimony). The Recorder of Deeds is in no way "engaged in the sale, rental, or financing of housing." His actions simply record the transactions without any regard to the terms and conditions of the sale or rental.

■ After examining the language of § 3604(c), and the limited legislative history of that section, we are forced to draw the conclusion that § 3604(c) does not apply to the acts of the Recorder of Deeds and particularly to the acts of the Recorder in this case. The Recorder in this case has merely accepted for recording a deed meeting all of the requirements of the Pennsylvania recording statutes, a deed that is, on its face, free of any improper or discriminatory matter. The act of accepting such a deed, or any deed at all, and placing it in the record is not a publication within the meaning of § 3604(c), nor is it done with

respect to the sale of the real estate. As the division of the D.C. Circuit Court of Appeals stated in its opinion,

> The Recorder of Deeds, impartial in thought as well as action, is not giving the approbation of the state to the substantive contents of the deeds filed. The Recorder, the cold steel safety deposit box of the real estate industry, merely preserves documents. Although he acts on behalf of the government, he acts as a studiously *neutral* repository.

465 F.2d at 658 (Judge Tamm's opinion) (emphasis in original). As a neutral repository, the Recorder cannot and does not publish a thing, nor does he violate § 3604(c).

## II. THE § 1982 CLAIM.

In addition to their Title VIII claim, plaintiffs make a claim under 42 U.S.C. § 1982. This section guarantees to all citizens of the United States "the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." The case law has interpreted this statute to protect "the right of black persons to hold and acquire property on an equal basis with white persons and the right of blacks not to have property interests impaired because of their race." *City of Memphis v. Greene*, 451 U.S. 100, 122, 101 S.Ct. 1584, 1598, 67 L.Ed.2d 769 (1981). Accordingly, the Supreme Court has required plaintiffs alleging a violation of § 1982 "to demonstrate some impairment of property interests." *Id.* at 122, fn. 35, 101 S.Ct. at 1598, fn. 35.

■ Plaintiffs cannot make the required demonstration. The restrictive covenant that allegedly burdens their property is unenforceable, and has been since 1948 when the Supreme Court declared such covenants unenforceable in *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). Further, the Supreme Court has held that § 1982

> does not deal specifically with discrimination in the provision of services or facili-

ties in connection with the sale or rental of a dwelling. It does not prohibit advertising or other representations that indicate discriminatory preferences. It does not refer explicitly to discrimination in financing arrangements or in the provision of brokerage services.

*Jones v. Alfred H. Mayer, Co.,* 392 U.S. 409, 413, 88 S.Ct. 2186, 2189, 20 L.Ed.2d 1189 (1968). Therefore, the mere allegation that the Recorder files documents indicating discriminatory preferences does not state a claim under § 1982.

■ The only allegation of the complaint that comes close to alleging an impairment of property interests caused by the actions of the Recorder of Deeds states that the Recorder's actions "subject[ ] Plaintiffs to economic harm by limiting the class of prospective buyers of Plaintiffs' residence." Yet, as we have pointed out above, the racially restrictive covenant to which plaintiffs' deed refers is not enforceable. The mere presence of an unenforceable covenant in plaintiffs' chain of title cannot be said to impair plaintiffs' property rights. The District Court in *Mayers v. Ridley* held,

> It is stretching too far to say that the presence of the offensive language in a deed in the custody of the Recorder is going to frighten the would-be-buyer. We must face the practicality that buyers do not begin their negotiations by examining the records maintained by the Recorder of Deeds. That function is performed by brokers, attorneys and title insurance companies making record searches. Brokers, lawyers and title insurance companies are fully aware that racially restrictive covenants are not enforceable.

330 F.Supp. 447 (D.D.C.1971), *rev'd,* 465 F.2d 630 (D.C.Cir.1972). We agree with this reasoning and therefore hold that, because plaintiffs have failed to allege a sufficient impairment of their property rights, they have not alleged a cause of action under 42 U.S.C. § 1982.

## III. THE § 1983 CLAIM.

■ Plaintiffs' § 1983 action is based on the Recorder's alleged violation, not of any constitutional mandate, but of the statutory provisions of 42 U.S.C. §§ 1982 and 3604(c). The Supreme Court held violations of federal statutory law to be actionable under § 1983 in the case of *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). However, because we find that plaintiffs have failed to allege a violation of either § 3604(c) or § 1982, we must also find that they have not successfully pleaded a violation of § 1983.

## IV. THE PENDANT STATE CLAIMS.

Because we find that plaintiffs have not stated any substantial federal claims, and because we are dismissing all federal claims on this motion to dismiss, we will exercise our discretion and refrain from exercising jurisdiction over plaintiffs' pendant state claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187 (3d Cir.1976).