John LESNICK and Sandra
Lesnick, Appellees,

v.

CHARTIERS NATURAL GAS
COMPANY, A Pennsylvania
Corporation, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 7, 2005.
Filed Dec. 30, 2005.

Brian M. Mancos, Charleroi, for appellant.

Peter M. Suwak, Washington, for appellees.

Before: KLEIN, PANELLA and JOHNSON, JJ.

OPINION BY KLEIN, J.:

¶ 1 Chartiers Natural Gas Company appeals from the Order granting free gas to John and Sandra Lesnick, husband and wife, pursuant to a 1924 agreement given in exchange for drilling rights on the property. The trial court rejected an unrecorded 1948 agreement which would have terminated the free gas. We affirm.

¶ 2 Predecessors in the chain of title had allowed a drilling company to drill for gas on the property in exchange for an agreement that if sufficient gas was obtained, the grantor of the Oil and Gas lease would be entitled to free gas. This 1924 Oil and Gas lease was recorded. Chartiers claims a document, bearing the date 1948, states that owners at that time made an agreement where for consideration, those owners would get free gas for the farm as long as they owned it, but the free gas would terminate if they sold the farm. This agreement was never recorded, but purportedly found with the papers Chartiers received when they obtained the lease in 1980.

¶ 3 After the Lesnick's purchased the farm, they saw the operations of the gas well on the property. They had been paying for gas. They then noted the 1924 agreement and sued for free gas under the agreement. The trial court agreed with them and granted them free gas.

¶ 4 Chartiers raises four issues on appeal:

1. The trial court erred by failing to admit the 1948 agreement under the "ancient document" rule.

2. The trial court erred when it held that the 1948 agreement had to be recorded.

3. The trial court erred when it held the Lesnicks were bona fide purchasers without actual or constructive notice of the 1948 agreement.

4. The trial court erred when it failed to hold that the language of the 1924 agreement precludes the Lesnicks from obtaining free gas because the well does not produce enough.

None of the arguments has merit.

1. **Admissibility of the 1948 agreement**

¶ 5 Chartiers complains that the trial court erred when it refused to admit the 1948 agreement, which would have precluded the Lesnicks' claim for free gas. The 1948 agreement first surfaced in 1980 when Chartiers bought the land and found it with other sellers' documents. However, to qualify as an ancient document, it is necessary to show that the document is (a) over 30 years old; (b) free of erasures, alterations, etc., and (c) in proper custody. *Louden v. Apollo Gas Co.,* 273 Pa.Super. 549, 417 A.2d 1185 (1980).

¶ 6 Here there is no evidence of the date of the document before 1980 except that it bears the date 1948. This purported date is not determinative—it could have been drafted at any time and simply back-dated. If it were written about 1980, when it is claimed to have been found, it is less than 30 years old.

¶ 7 Sandra Bitner, Vice President of Chartiers, testified the 1948 agreement was part of documentation received by

Chartiers when it bought the well in 1980 from William Potts. It is unclear how Bitner knows what documents were supplied to Chartiers in 1980 when she did not begin working for Chartiers until 1985. (N.T. Hearing, 5/10/04, p. 23.) From personal knowledge, at most Bitner can testify that the document was present in 1985. Further, the document itself contains no indicia of reliability. It is not notarized. The signatures are not dated. There are, as far as we can discern, no dated official stamps or seals. Finally, there is no indication of where the document was between its alleged creation in 1948 and the purported delivery to Chartiers in 1980. With no other indication of reliability of the age of the document, some certainty in the chain of custody of the document might provide a clue to the age of the document.

¶ 8 In *Louden v. Apollo Gas Company, supra,* a case both parties rely on for this issue, the document in question contained its own indicia of age, independent of the purported 1900 date. That document contained an official government stamp also dated 1900. It also contained the odd spelling of "Pittsburg" (no "h") that was common to that time period. As such, our court found no error in the trial court admitting the evidence under the ancient document rule. Here, other than the testimony of a person who was not even employed by Chartiers when the document in question was purportedly delivered to Chartiers, there is nothing in the record to indicate the age of the document. Therefore, we discern no error in the trial court refusing to admit the 1948 lease into evidence.

### 2. The need to record the natural gas lease

¶ 9 All of the deeds in the title referred to the fact that they were subject to oil and natural leases. In fact, the 1924 lease which gave the farm owner the right to free gas in exchange for allowing the oil company to drill and maintain a well *was* recorded. The oil and natural gas rights are part of the land, and therefore have to be recorded. Although oil and gas rights may not be considered the same as other real estate interests for tax and other purposes,[1] since granting an oil and gas lease limits the rights of a landowner who might buy the property, they must be on record to protect the owner against the claim of a bona fide purchaser.

¶ 10 Oil and natural gas leases have been recorded in this Commonwealth since at least the 1890's. *See Thompson v. Christie,* 138 Pa. 230, 20 A. 934 (1890). *Duquesne Natural Gas Co. v. Fefolt,* 203 Pa.Super. 102, 198 A.2d 608 (1964) reiterates the fact that Pennsylvania considers such gas "leases" to be, in reality, transfers of realty. "All of the Pennsylvania cases are in accord that the original grant and conveyance by the Fefolts to the company *created an estate in real property* and severed the gas and oil from the rest of the real estate." *Id.* at 610 (emphasis added). The Commonwealth Court also recognizes that an oil and gas lease such as is at issue here is statutorily required to be recorded. *See In re Correction of Official Records with Civil Action. Appeal of Energy Explorations,* 44 Pa.Cmwlth. 511, 404 A.2d 741, 742 (1979). Additionally, 23 P.S. § 351 requires all transferences of real property to be recorded or "they shall

---

**1.** Chartiers relies on *Independent Oil and Gas v. Board of Assessment,* 572 Pa. 240, 814 A.2d 180 (2002), for the proposition that gas rights are not real property. In that case our Supreme Court was asked to interpret the spe-

cific definition of real property as found in a particular tax statute. That statute is not at issue here so that definition of real property is not applicable.

be judged fraudulent and void as to any subsequent bona fide purchaser." The purported 1948 lease was required to be recorded.

### 3. The Lesnicks are *bona fide* purchasers

¶ 11 Whether the Lesnicks investigated the details of the natural gas lease prior to purchase, the recorded title showed that although the Lesnicks had to give the Chartiers the right to use the gas well, in exchange they were to receive free natural gas. They had no knowledge of the 1948 agreement with a predecessor in title. The fact that they paid to get natural gas when they moved in and later paid under protest does not defeat this right.

¶ 12 Chartiers claims the existence of the well head on the Lesnick property gave the Lesnicks constructive notice of Chartiers' interest. Due diligence by the Lesnick would have revealed the 1948 lease. We disagree. The duly recorded 1924 lease provided the Lesnicks with a statutorily created notice they were entitled to free gas. *See* 21 P.S. § 357. Chartiers points to no authority that due diligence required anything greater than notice of the recorded lease. The purpose of recording such leases is to provide the public with proper assurances of exactly what, if anything, is being transferred along with the title to the property. There is no point in recording such information if the buyer is not entitled to rely upon such information.

¶ 13 A bona fide purchaser is one who buys real or personal property without notice of claim of others' outstanding rights in the property. The Lesnicks had notice of claim of the 1924 lease but no notice of claim under the purported 1948 lease. The Lesnicks are therefore bona fide purchasers subject to the terms of the recorded documents but are innocent of knowledge of the alleged 1948 termination of gas rights.

### 4. The claim that there is no right to free oil under the 1924 agreement

¶ 14 At this stage, Chartiers claims that there is not sufficient gas from the well to supply the Lesnicks and anyone else, which would negate the right to free gas. However, Chartiers admitted that there was sufficient gas to require payment under the 1924 agreement, and the trial judge noted that "the Defendant admits that the well subject to the agreement is producing sufficient quantities to supply the subject property." In the answer to plaintiff's complaint for declaratory judgment, Chartiers states at paragraph 18: "The subject well services only two customers, the Plaintiffs and the Ogrodowski family." Bitner testified a technician placed a meter on the well in question on May 5, 2004. In the five days between the technician installing the meter and her testimony, Bitner stated the technician reported a "zero" on the meter. (N.T. Hearing, 5/10/04, p. 40). We will not fault the trial court for accepting Chartiers' averment in New Matter over the hearsay testimony presented in court. If there comes a time when Chartiers can prove by competent evidence the well in question does not produce sufficient gas to meet the terms of the 1924 lease, then Chartiers may seek to avoid providing free gas to the Lesnicks.

¶ 15 Order affirmed.