**CHESAPEAKE APPALACHIA, LLC**

v.

**Ginger GOLDEN, in her capacity as Wayne County Recorder of Deeds, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 12, 2011.

Decided Jan. 27, 2012.

Ronald M. Bugaj, Honesdale, for appellant.

Kevin C. Abbott, Pittsburgh, for appellee.

John M. Smith, Elizabethtown, for amicus curiae Pennsylvania Recorder of Deeds Association.

BEFORE: LEADBETTER, President Judge,[1] and McGINLEY, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Ginger Golden (Recorder), in her capacity as Wayne County Recorder of Deeds, appeals from an order of the Court of Common Pleas of Wayne County (trial court), dated April 21, 2011, granting Chesapeake Appalachia, LLC's (Chesapeake) motion for summary judgment in declaratory relief and ordering the Recorder "to rescind her policy against recording 'blanket assignments' and to record all documents that are within the scope of Pennsylvania's recording statutes, provided they are properly acknowledged and the appropriate statutory fee has been paid." (Tr. Ct. Op. and Order, 4/21/11, at 5.)[2] At issue here are 211 leases that are the subject of four multiple lease assignments, which Chesapeake, a natural gas exploration and production company and the assignor in this case, submitted for recording on March 29, 2010.[3] We affirm.

The Recorder is the duly-elected Recorder of Deeds of Wayne County, who took office in January 1988. The Recorder's office is comprised of four full-time staff members in addition to the Recorder.

According to the Recorder's brief, there has been, in the past three to four years, a thirty-percent increase in the volume of documents submitted for recording due to an increase in oil and gas-related activities in Wayne County, as a result of the Marcellus Shale Formation. As of July 6, 2010, Chesapeake, an Oklahoma limited liability company based in Oklahoma City, had recorded 3,391 oil and gas leases in Wayne County.

On June 3, 2010, Chesapeake commenced this action by filing a complaint that sought declaratory, injunctive and mandatory relief as a result of the Recorder's refusal to record certain documents related to oil and gas leases in Wayne County.[4] After a number of other pleadings were filed, the trial court issued an order resolving most of the issues before it. Chesapeake and the Recorder then filed cross-motions for summary judgment. In her summary judgment motion, the Recorder asserted that her policy of rejecting multiple lease, or "blanket," assignments is proper because of her inability to index the assignments as to the lessors of each underlying lease as required by Pennsylvania law. In its summary judgment motion, Chesapeake asserted that the Recorder is obligated to record documents as they are prepared and presented by the parties and the Recorder cannot set a policy against recording multiple lease assignments. Chesapeake thereafter withdrew its sum-

---

1. This case was assigned to the opinion writer on or before January 6, 2012, when President Judge Leadbetter completed her term as President Judge.

2. The trial court did not expressly dispose of the Recorder's cross-motion for summary judgment, but the Recorder recognizes that "the necessary implication of the trial court's Opinion and Order is the denial of the Recorder's motion." (Recorder's Br. at 16.)

3. The four multiple lease assignments that Chesapeake sought to record contained twenty-six leases, thirty-nine leases, fifty-five leases, and ninety-one leases, respectively.

4. Chesapeake attached to the complaint over ninety documents that the Recorder had rejected for recording. Chesapeake also initially sought preliminary injunctive relief, but it withdrew that motion. It did not, however, withdraw the motion for permanent injunctive relief.

mary judgment request with respect to the remaining documents that were not categorized as multiple lease assignments.

On April 21, 2011, after oral argument in which Chesapeake, the Recorder, and the Pennsylvania Recorder of Deeds Association (PRODA), as *amicus curiae*, participated, the trial court granted Chesapeake's motion for summary judgment, directing the Recorder to "record all documents that are within the scope of Pennsylvania's recording statutes," so long as they are "properly acknowledged and the appropriate statutory fee has been paid." (Tr. Ct. Op. at 5.) The Recorder then appealed to this court.[5]

■■■■ On appeal, the Recorder argues that the trial court erred as a matter of law in compelling the Recorder to accept Chesapeake's multiple lease assignments for recording.[6] Specifically, the Recorder asserts that the trial court improperly granted Chesapeake relief in mandamus because Chesapeake did not meet its burden of proving entitlement to such relief.[7] In this regard, the Recorder contends that Chesapeake has shown neither a clear legal right to have its multiple lease assignments recorded nor a corresponding duty in the Recorder to record them. We disagree.

Preliminarily, we note the Recorder's admission that "leases, and assignments of leases, are documents that are entitled to be recorded pursuant to statutory law." (Recorder's Br. at 20.) There is no question that the relevant statutory language not only supports this statement, but proceeds further to require the Recorder to record the instruments of writing that are presented to her. For example, section 1 of the Act of May 12, 1925, P.L. 613, *as amended*, 21 P.S. § 351 (emphasis added), specifically provides:

> All deeds, conveyances, contracts, and other instruments of writing wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands, tenements, or hereditaments situate in this Commonwealth, upon being acknowledged by the parties executing the same or proved in the manner provided by the laws of this Commonwealth, *shall be recorded* in the office for the recording of deeds in the county where such lands, tenements, and hereditaments are situate....

Further, section 1 of the Act of April 24, 1931, P.L. 48, 21 P.S. § 356 (emphasis added), specifically provides:

> All agreements in writing relating to real property situate in this Commonwealth by the terms whereof the parties executing the same do grant, bargain, sell, or convey any rights or privileges of a permanent nature pertaining to such

---

**5.** This court's scope of review of a trial court's decision to grant or deny a motion for summary judgment is limited to a determination of whether the trial court committed an error of law or an abuse of discretion. *Stonybrook Condominium Association v. Jocelyn Properties, Inc.*, 862 A.2d 721, 723 (Pa.Cmwlth. 2004).

**6.** Both PRODA and The County Commissioners' Association of Pennsylvania filed *amicus* briefs here in support of the Recorder.

**7.** As the Recorder points out, "[m]andamus is an extraordinary remedy," *County of Alleghe-*

*ny v. Commonwealth*, 507 Pa. 360, 372, 490 A.2d 402, 408 (1985), which " 'lies to compel the performance of a ministerial act or a mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and a want of any other appropriate and adequate remedy[.]' " *Camiel v. Thornburgh*, 507 Pa. 337, 341 n. 2, 489 A.2d 1360, 1362 n. 2 (1985) (citation omitted). Although the trial court did not specifically state that its opinion and order awarded Chesapeake mandamus relief, both Chesapeake and the Recorder agree that the trial court's decision had that effect.

real property ... shall be acknowledged according to law by the parties thereto or proved in the manner provided by law, and *shall be recorded* in the office for the recording of deeds in the county or counties wherein such real property is situate.

In *Penn Title Insurance Company v. Deshler*, 661 A.2d 481, 486 (Pa.Cmwlth. 1995), this Court explained that the Recorder of Deeds of Monroe County was charged with recording a deed or mortgage instrument as the parties had prepared and executed it. We also explained that principles of statutory construction, when applied to the statute relevant therein,[8] did not require otherwise. Similarly, here, the mandatory and unambiguous language of 21 P.S. §§ 351 and 356 requires the Recorder to record the subject documents as they are presented to her.[9]

While not binding on this court, the reasoning of our sister court, the Superior Court of Pennsylvania, in *Lesnick v. Chartiers Natural Gas Company*, 889 A.2d 1282 (Pa.Super.2005), supports our decision. The *Lesnick* Court stated:

Oil and natural gas leases have been recorded in this Commonwealth since at least the 1890's.... *Duquesne Natural Gas Co. v. Fefolt*, 203 Pa.Super. 102, [198 A.2d 608 (1964)] reiterates the fact that Pennsylvania considers such gas "leases" to be, in reality, transfers of realty.... The Commonwealth Court also recognizes that an oil and gas lease ... is statutorily required to be recorded. *See In re Correction of Official Records with Civil Action. Appeal of Energy Explorations*, 44 Pa.Cmwlth. 511, 404 A.2d 741, 742 [ (1979) ]. Additionally, 21 P.S. § 351 requires all transferences of real property to be recorded or "they shall be judged fraudulent and void as to any subsequent bona fide purchaser."

*Id.* at 1284–85.

By way of further persuasive authority, the United States District Court for the Middle District of Pennsylvania encapsulated the duty of a recorder of deeds in *Woodward v. Bowers*, 630 F.Supp. 1205, 1207 (M.D.Pa.1986) (emphasis omitted), as follows:

In short, the Recorder is a ministerial officer charged with recording all documents presented to him. The only situations in which a Recorder may refuse to record a document presented to him are where the appropriate fee is not paid, where the document is not of the type that is statutorily entitled to recording ... and where the document on its face lacks a proper acknowledgment.[10] The Recorder is truly just a "custodian" of documents.

---

**8.** Section 1 of the Act of March 18, 1875, P.L. 32, *as amended*, 16 P.S. § 9851.

**9.** *See also Brown v. Levy*, 25 A.3d 418, 420 (Pa.Cmwlth.2011) (providing that a prothonotary, despite playing an essential role in the court system, has neither the authority to interpret statutes, evaluate the merits of a litigant's pleading, nor to decline to accept a document that has been timely filed).

**10.** We would add to that list that a recorder of deeds may refuse to record a document where the county, by ordinance, requires him or her not to record or accept for recording

any conveyance of real estate or other instrument that affects real estate in that county, unless the uniform parcel identifier is contained in the body of the document or endorsed thereon, to be recorded therewith. Section 1.1 of the Act of April 22, 1929, P.L. 620, 16 P.S. § 9781.1, added by the Act of January 15, 1988, P.L. 8. A "uniform parcel identifier" is "[a] finite, punctuated sequence of numbers indicating the land parcel or other interest in real estate as shown on the recorded county tax map, which sequence may be the existing county tax parcel number." Section 2 of the Act of January 15, 1988, P.L. 1, 21 P.S. § 332. Here, Chesa-

Based on all of the above, the Recorder's argument that Chesapeake has shown neither a clear legal right to have its multiple lease assignments recorded nor a corresponding duty in the Recorder to record them lacks merit.

 Moreover, the Recorder's assertion that she needs discretion to reject documents based on their form does not aid her case.[11] The Recorder contends that the subject multiple lease assignments are not in a format that allows for proper indexing because she "cannot index each of the property owners as direct parties and cannot match up the book and page numbers of the original leases using the Recorder's current computer system." (Recorder's Br. at 23.)[12] Also, the Recorder argues, the language of Section 3 of the Act of April 24, 1931, P.L. 48, 21 P.S. § 358(2), added by the Act of July 7, 2006, P.L. 596, suggests that recording multiple lease assignments would not serve as constructive notice of the recording in accordance with 21 P.S. § 357,[13] unless those assignments are properly indexed with respect to *each* party, including the property owner, and, therefore, her decision not to record Chesapeake's multiple lease assignments is properly within her discretion.

However, the language of 21 P.S. § 358(2), says no such thing. Rather, that language actually provides that, for constructive notice in a case such as this one, where the uniform parcel identifier is not used, "the document shall be recorded" and "indexed properly as to *the party* in all alphabetical indices." (Emphasis added). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 3 of the Statutory Construction Act, 1 Pa.C.S. § 1921(b). The primary definition of "party" in Black's Law Dictionary is as follows: "One who takes part in a transaction <a party to the contract>." *Black's Law Dictionary* 1231 (9th ed.2009). (*See* Tr. Ct. Op. at 4.)[14] The Recorder has not here asserted any legal authority for the proposition that anyone other than the assignor and the assignee should properly be considered "the party" for purposes of indexing an assignment of a lease. Therefore, the Recorder's argument that she properly exercised her discretion in rejecting Chesapeake's multiple lease assignments for recording also lacks merit.

 Next, the Recorder asserts that Chesapeake is not entitled to mandamus

peake and the Recorder agree that Wayne County does not index by uniform parcel identifier.

11. The Recorder acknowledges that she may not have discretion to reject documents for recording based on their content, relying on *Penn Title,* 661 A.2d at 486.

12. The Recorder admits that she previously recorded multiple lease assignments but, because of mistakes arising out of these recordations, changed her policy in this regard over ten years ago. (Recorder's Br. at 8.) Even so, the Recorder testified:

> Q. If there was software available that would allow you to record and properly index by your standards a blanket assignment would you utilize that?
> A. No.

> Q. Why not?
> A. Because I'm happy with the system that I have and it works.
> (N.T., 1/7/11, at 19.)

13. Section 2 of the Act of April 24, 1931, P.L. 48, 21 P.S. § 357.

14. The trial court also stated that "[i]t is 'Contract Law 101' that in an assignment of a lease the parties are the assignor and the assignee, not the underlying lessor." (Tr. Ct. Op. at 4.) Further, even the Recorder acknowledged that she was not sure that indexing by property owner was required by law. (N.T., 1/7/11, at 17–18.)

relief because it has available the alternative, adequate remedy of recording individual lease assignments. However, it goes without saying that filing single lease assignments is not an adequate remedy for a company that has the right to file multiple lease assignments and chooses to do so, but is illegally thwarted in that right.[15]

Last, the Recorder contends that Chesapeake is not entitled to mandamus relief because the general public is benefitted by the Recorder's policy against recording multiple lease assignments. In this vein, the Recorder cites *Equitable Gas Company v. City of Pittsburgh,* 507 Pa. 53, 63, 488 A.2d 270, 275 (1985), for the proposition that mandamus relief may not be granted where doing so would contravene public policy. However, we have concluded that the Recorder is required by statute to record multiple lease assignments and, therefore, doing so accords with public policy. *Equitable Gas* is thus inapposite.

Accordingly, we affirm.

### ORDER

AND NOW, this 27th day of January, 2012, the order of the Court of Common Pleas of Wayne County, dated April 21, 2011, is hereby affirmed.

---

**15.** Further, because Pennsylvania engages in a race-notice recording system, which assigns priority of interest, absent actual or constructive notice of the interests of another party, by order of filing, *see In re Distribution of Pro-* *ceeds from Sheriff's Sale of Premises 250 Bell Road, Lower Merion Township, Montgomery County,* 479 Pa. 222, 229, 388 A.2d 297, 301 (1978); 21 P.S. § 351, the Recorder's argument is disingenuous at best.