## Nice's Appeal.　　Hegins's Estate.

1. An unrecorded mortgage will avail against the mortgagor or his alienee, or mortgagee with notice, or a voluntary assignee for creditors.

2. A mortgage for purchase money is good against a judgment-creditor with actual notice before his debt is contracted.

3. The exception permitted by reason of actual notice under the equity of the law requiring mortgages to be recorded, is not to be allowed to prejudice the system for the government of decedents' estates and the policy which originated it.

4. At the death of a man the law fixes the condition of his estate, and prescribes its management and distribution.

5. An unrecorded mortgage is neither a lien nor such an estate as stands in the way of an Orphans' Court sale for the payment of debts; it is no higher than a specialty debt.

6. A debt secured by an unrecorded mortgage without possession taken under it in the lifetime of the mortgagor, cannot, upon his death, take precedence of his general debts, but must come in for its share as one of them.

January 30th 1867.　　Before WOODWARD, C. J., THOMPSON, READ and AGNEW, JJ.　STRONG, J., at Nisi Prius.

Appeal by Decatur E. Nice and William Donaldson, from the decree of the Orphans' Court of *Schuylkill county*, distributing the estate of Charles W. Hegins, deceased.

On the 30th of December 1857, Judge Hegins executed a mortgage to George H. Clay in the sum of $4000, in trust, to secure the appellants and other creditors of the judge.

The mortgage was on certain real estate in Northumberland county, and was signed by the judge, but not witnessed, acknowledged or recorded, but was sent to the judge, who was then in Sunbury. It remained in his possession at his death.

The account of his administrator showed a balance of personal estate in his hands amounting to $1578.96. The real estate on which the mortgage was given was sold by order of the Orphans' Court for the payment of his debts, and after paying judgments against it, there remained a balance of $1087.39. This, together with the balance on the administration account, the auditor, to make distribution, divided amongst all the remaining creditors, including those for whom the mortgage was given. They claimed that they were entitled by virtue of the mortgage to all the balance of the proceeds of the land after paying judgments.

On exceptions to the auditor's report, the court confirmed it.

The error assigned was that the fund arising from the sale of

the land, after paying judgment-creditors, should have been awarded to the mortgage-creditors.

*F. B. Gowen*, for appellants, cited Levine *v.* Will, 1 Dallas 430; Stroud *v.* Lockhart, 4 Id. 153; Jacques *v.* Weeks, 7 Watts 283–4; Manufacturers' and Mechanics' Bank *v.* Bank of Pennsylvania, 7 W. & S. 335; Mellon's Appeal, 8 Casey 121; Britton's Appeal, 9 Wright 172; Speer *v.* Evans, 11 Id. 141; Miner *v.* Graham, 12 Harris 491; Wolf *v.* Eichelberger, 2 Penna. R. 346; Twelves *v.* Williams, 3 Wh. 485; Aurand's Appeal, 10 Casey 151.

*J. W. Ryon*, for appellees, cited Act of March 28th 1820, § 1, Purd. 324, pl. 94, 7 Sm. L. 303; Foster's Appeal, 3 Barr 79; Hulings *v.* Guthrie, 4 Id. 123; Adams's Appeal, 1 Penna. R. 447; Kauffelt *v.* Bower, 7 S. & R. 64; Act of May 28th 1715, § 8, Purd. 324, pl. 93, 1 Sm. L. 95; Aurand's Appeal, 10 Casey 151; White's Appeal, 12 Id. 134; Mellon's Appeal, 8 Id. 121; Miller's Appeal, 6 Id. 478.

The opinion of the court was delivered, February 25th 1867, by
AGNEW, J.—By the terms of the Act of 28th May 1715, no mortgage, or defeasible deed in the nature of a mortgage, shall pass the estate it purports to convey unless it be recorded within six months. But it has been held that an unrecorded mortgage is not wholly inoperative. It will avail against the mortgagor himself, or his alienee or mortgagee with notice or a voluntary assignee for creditors; and a mortgage for purchase-money is good against a judgment-creditor with actual notice before his debt was contracted: Mellon's Appeal, 8 Casey 121; Brittain's Appeal, 9 Wright 172.

The reason seems to be, that the Act of 1715 being intended to protect subsequent mortgagees and others from injuries caused by secret pledges of property; where actual notice exists no injury is done—*cessante ratione cessat ipsa lex*. But though the letter of the law gives way to promote the equity of the spirit, still an unrecorded mortgage is a forbidden thing; and this exemption is not to be allowed to prejudice a necessary system for the government of decedents' estates, and the policy which gave it birth. We are asked to extend the exemption of an unrecorded mortgage, lying dormant at the death of the mortgagor, from the legislation which forbids it and limits its operation, and to give it precedence over the lien of the general debts of the decedent. The argument to support this claim is specious—that as the mortgage was good against the mortgagor himself while he lived, it must intercept claims which attach only at death and must be in the order of time an instant later. However plausible this might

[Nice's Appeal.]

appear against heirs and devisees whose rights are inferior to those of creditors, it is inadmissible against the lien of the general debts.

So long as a man lives his estate follows him, is guided by his hand, and floats with his interests. But death casts it into an unchangeable mould, the law then fixing its condition and prescribing its management and its distribution. His real estate becomes assets for the payment of debts. An Orphans' Court sale converts it, and transfers the title discharged of all liens. But an unrecorded mortgage has no lien, a lien being prohibited by the express terms of the Act of 28th March 1820.

It must operate therefore on the estate, if it avail at all. To avail as an estate it must resist the power of the Orphans' Court sale, and this is not conceded to the recorded mortgage, which is neither prohibited by the Act of 1715 nor limited by the Act of 1820: Bowers *v.* Oyster, 3 Penna. 240; Moore *v.* Shultz, 1 Harris 98; Foster's Appeal, 3 Barr 79. If it be neither a lien nor such an estate as stands in the way of an Orphans' Court sale for payment of debts, it is manifestly no higher than a specialty debt, and this is the precise position given to it by this court in Adams's Appeal, 1 Penna. 447. "In fact," remarks Justice Smith, "to give it now the validity of a regular mortgage would repeal the Acts of 28th May 1715 and 25th March 1820, and the 14th section of the Act of 1794." To those I may add the 21st section of the Act of 24th February 1834, establishing the order for the payment of debts, and the 24th section of that act controlling the lien of the general debts by a limitation of five years. It excepts the lien of mortgages and judgments, but this evidently refers to recorded mortgages, for none others become a lien at law. An unrecorded mortgage to which a lien is prohibited, must therefore intercept the proceeds of sale between the recorded mortgage or judgment and the general debts. To allow this, is to give it a place unprovided for in the system established for the regulation of decedents' estates, and upon a principle of an imperishability of interest, which is forbidden by the law of Orphans' Court sales for the payment of debts.

We therefore hold that a debt secured by an unrecorded mortgage without possession taken under it in the lifetime of the decedent, has no right to take precedence of the general debts, but must come in for its share as one of them.

The decree of the court below is affirmed, with costs to be paid by the appellants.