**[J-64-2018]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| MERSCORP, INC. N/K/A MERSCORP HOLDINGS, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; BANK OF AMERICA, N.A.; CITIMORTGAGE, INC.; CITIBANK, N.A.; CREDIT SUISSE FINANCIAL CORPORATION; EVERHOME MORTGAGE COMPANY; JP MORGAN CHASE BANK, N.A.; STATE FARM BANK F.S.B.; WELLS FARGO BANK, N.A.; SOVEREIGN BANK; HSBC BANK USA, N.A.; HSBC FINANCE CORPORATION; GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES, L.P. N/K/A FINANCE OF AMERICA MORTGAGE LLC; CUSTOMERS BANCORP, INC.; CUSTOMERS BANK; THE BANK OF NEW YORK MELLON; THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.; DEUTSCHE BANK NATIONAL TRUST COMPANY; DEUTSCHE BANK TRUST COMPANY AMERICAS; SANTANDER BANK, N.A. F/K/A SOVEREIGN BANK, N.A.; AND TRIDENT MORTGAGE COMPANY, L.P., | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | No. 67 MAP 2017<br><br>Appeal from the Order of the Commonwealth Court at No. 523 CD 2016 dated May 4, 2017, Reversing the Order of the Court of Common Pleas of Delaware County, Civil Division, at No. 13-010139, dated March 22, 2016.<br><br>ARGUED:  September 26, 2018 |
| Appellees | : : : : : | |
| v. | : : : : : | |
| DELAWARE COUNTY, PENNSYLVANIA, RECORDER OF DEEDS, BY AND THROUGH THOMAS J. JUDGE, SR., IN HIS OFFICIAL CAPACITY AS THE RECORDER OF DEEDS OF DELAWARE COUNTY, PENNSYLVANIA; FREDERICK | : : : : : : : | |

C. SHEELER, IN HIS OFFICIAL :
CAPACITY AS RECORDER OF DEEDS :
IN AND FOR THE COUNTY OF BERKS, :
PENNSYLVANIA; THE OFFICE OF THE :
RECORDER OF DEEDS IN AND FOR :
THE COUNTY OF BERKS, :
PENNSYLVANIA; THE COUNTY OF :
BERKS, PENNSYLVANIA; JOSEPH J. :
SZAFRAN, IN HIS OFFICIAL CAPACITY :
AS RECORDER OF DEEDS IN AND FOR :
THE COUNTY OF BUCKS, :
PENNSYLVANIA; THE OFFICE OF THE :
RECORDER OF DEEDS IN AND FOR :
THE COUNTY OF BUCKS, :
PENNSYLVANIA; THE COUNTY OF :
BUCKS, PENNSYLVANIA; RICHARD T. :
LOUGHERY, IN HIS OFFICIAL :
CAPACITY AS THE RECORDER OF :
DEEDS IN AND FOR THE COUNTY OF :
CHESTER, PENNSYLVANIA; THE :
OFFICE OF THE RECORDER OF :
DEEDS IN AND FOR THE COUNTY OF :
CHESTER, PENNSYLVANIA; AND THE :
COUNTY OF CHESTER, :
PENNSYLVANIA, :
:
        Appellants :

## OPINION

**JUSTICE DOUGHERTY**                    **DECIDED:  April 26, 2019**

We consider whether the Commonwealth Court correctly determined that 21 P.S. §351, "Failure to record conveyance," does not create a mandatory duty to record all mortgages and mortgage assignments in a county office for the recorder of deeds.  We hold the Commonwealth Court did not err, and therefore affirm.

This appeal arose from four separate, yet substantively similar, lawsuits filed by the county recorders in Delaware, Chester, Bucks and Berks Counties and their respective Counties (collectively, the Recorders).  Pursuant to Pa.R.C.P. 213.1

(Coordination of Actions in Different Counties), the suits filed by the Delaware, Chester and Bucks County Recorders were coordinated in the Court of Common Pleas for Delaware County in April 2015, and the suit filed by the Berks County Recorder was coordinated into the Delaware County action in October of 2015.[1] The Recorders sued appellees, MERSCORP, Inc., its wholly-owned subsidiary, Mortgage Electronic Registration Systems, Inc. (MERS), and several financial institutions who are members of MERS (collectively, MERSCORP). MERSCORP owns and operates the MERS® System, which is a national electronic registry system for promissory notes associated with mortgages and secured by residential real estate. The MERS® System permits its members to transfer promissory notes associated with mortgages between and among its financial institution members. After a member-to-member transfer of a note, MERS remains the mortgagee and title holder of record as a "nominee" for the holder of the promissory note and its successors and assigns. Under this system, MERS facilitates operation of the secondary market for mortgages by enabling its members to transfer the right to repayment on the note associated with a mortgage to other members by recording the transfers only in the MERS database. Thus, priority for the mortgage is established within the MERS® System for purposes of notification to the members, even when the transfers of the note are not recorded in county recording offices. As a result, county recording fees may be avoided by MERS members.

---

[1] The Recorder for Delaware County, Thomas J. Judge, Sr. filed a complaint in the Delaware County Court of Common Pleas in October 2013. The complaint was removed to Federal Court, and then remanded back to the Delaware County Court of Common Pleas. Recorder Judge then filed an amended complaint in the Delaware County Court of Common Pleas on October 30, 2015. The Recorders for Chester County, Richard T. Loughery, and Bucks County, Joseph J. Szafran, filed complaints in their respective Courts of Common Pleas in October 2014. Lastly, the Recorder for Berks County, Frederick C. Sheeler, filed a complaint in the Berks County Court of Common Pleas on October 15, 2015.

The Recorders' complaints set forth six identical claims[2] based on Section 351 of Title 21 (Deeds and Mortgages), which is entitled "Failure to record conveyance," and provides as follows:

> All deeds, conveyances, contracts, and other instruments of writing wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands, tenements, or hereditaments situate in this Commonwealth, upon being acknowledged by the parties executing the same or proved in the manner provided by the laws of this Commonwealth, shall be recorded in the office for the recording of deeds in the county where such lands, tenements, and hereditaments are situate. Every such deed, conveyance, contract, or other instrument of writing which shall not be acknowledged or proved and recorded, as aforesaid, shall be adjudged fraudulent and void as to any subsequent bona fide purchaser or mortgagee or holder of any judgment, duly entered in the prothonotary's office of the county in which the lands, tenements, or hereditaments are situate, without actual or constructive notice unless such deed, conveyance, contract, or instrument of writing shall be recorded, as aforesaid, before the recording of the deed or conveyance or the entry of the judgment under which such subsequent purchaser, mortgagee, or judgment creditor shall claim. Nothing contained in this act shall be construed to repeal or modify any law providing for the lien of purchase money mortgages.

21 P.S. §351.

A virtually identical challenge to the MERS® System was already proceeding in the United States District Court for the Eastern District, filed in 2011 by the Recorder of Deeds for Montgomery County, Pennsylvania, Nancy Becker (the Federal Action). The Federal Action was a putative class action complaint against MERSCORP seeking a declaratory judgment and permanent injunction establishing MERS members failed to record mortgage assignments in violation of Section 351. In 2012, the District Court held Section 351 creates a mandatory obligation on the part of MERS and its members to

---

[2] The complaints included the following counts: (1) Quiet Title; (2) Negligent or Willful Violation of 21 P.S. § 351; (3) Unjust Enrichment; (4) Civil Conspiracy to Violate 21 P.S. §351; (5) Aiding and Abetting; and (6) Declaratory Judgment and Permanent Injunction.

record documents memorializing the transfer of promissory notes. *Montgomery Cty. v. MERSCORP, Inc.*, 904 F. Supp. 2d 436 (E.D. Pa. 2012). Proceedings in the Delaware County coordinated actions were stayed pending appeal of the Federal Action.

On August 3, 2015, the Third Circuit Court of Appeals reversed the District Court's decision and held Section 351 does not create a mandatory duty to record all land conveyances. *Montgomery Cty. v. MERSCORP Inc.*, 795 F.3d 372 (3d Cir. 2015). Relying on the Third Circuit's decision, MERSCORP filed preliminary objections in the nature of a demurrer to the Recorders' complaints seeking dismissal on the basis that Section 351 does not provide a duty to record, and the Recorders do not have authority to enforce Section 351 in any event. The court overruled the preliminary objections, and denied MERSCORP's request to certify its interlocutory order for an immediate appeal. *See* 42 Pa.C.S. §702(b) (court may certify interlocutory order as involving controlling question of law on which there is substantial ground for difference of opinion and immediate appeal may materially advance ultimate termination of matter).

MERSCORP then filed a petition for review in the Commonwealth Court. *See* Pa.R.A.P. 1311(b), Note (where lower court refuses to amend interlocutory order to allow immediate appeal, petition for review is proper mode to determine whether prerogative appellate correction is required). The Commonwealth Court granted review of the following issues: "(1) whether Section 351 requires the recording of all mortgages and mortgage assignments; and (2) whether the General Assembly conferred on the Recorders a right of action to enforce Section 351." *MERSCORP, Inc. v. Delaware Cty.*, 160 A.3d 961, 964 (Pa. Cmwlth. 2017).

A divided Commonwealth Court reversed.[3]  The majority agreed with the Third Circuit's conclusion in the Federal Action, specifically ruling "Section 351 does not issue a blanket command that all conveyances must be recorded; it states that a conveyance 'shall be recorded' in the appropriate place, or else the party risks losing his interest in the property to a bona fide purchaser."  *MERSCORP*, 160 A.3d at 965, *quoting Montgomery Cty.*, 795 F.3d at 377.  The majority observed the plain language of Section 351 does not specify which party to a transaction must record a conveyance, nor does it state when recording must take place.  The majority also recognized Pennsylvania courts have consistently interpreted Section 351 and other provisions of Title 21 as intended to protect subsequent mortgages and purchasers, and that the failure to record inherently provides a limited consequence — the loss of a priority interest.  *Id.* at 965-66.  The majority found further support for its conclusion in precedent recognizing as valid even unrecorded interests in land.  *Id.* at 966, *citing US Bank N.A. v. Mallory*, 982 A.2d 986, 993 (Pa. Super. 2009) (recording mortgage assignment not prerequisite to filing complaint in mortgage foreclosure and failure to record does not negate validly executed mortgage assignment).

In addition, the majority held Section 351 does not confer any authority upon the Recorders to enforce Section 351.  *Id.* at 968, *citing Montgomery Cty.,* 795 F.3d 372.  The majority noted the Recorders have a ministerial duty to the public to record and safeguard records presented to them for recording, but that duty does not confer standing to file actions to protect the public from "inaccurate" records in the MERS® system.  *Id.[4]*

---

[3] Judge Wojcik authored the majority opinion, which was joined by Judge Leavitt, Judge Hearthway and Judge Cosgrove.  Judge Brobson authored a dissenting opinion joined by Judge McCullough and Judge Covey.  Judge Cohn Jubelirer did not participate.

[4] Judge Brobson's dissent was based on the appeal's procedural posture, arising from preliminary objections.  His dissent noted preliminary objections may be sustained only "where it is clear and free from doubt that the pleader has not pleaded facts sufficient to

We granted the Recorders' petition for allowance of appeal on the following issues:

> (1) Whether the Commonwealth Court erred in ruling that [MERSCORP] may systematically evade Pennsylvania's land recording statutes, including 21 P.S. § 351, and *not* record many thousands of conveyances in the Offices of the Recorders of Deeds across the Commonwealth?
>
> (2) Whether the Commonwealth Court erred in ruling that Recorders of Deeds and Counties do not possess standing or a right of action to pursue claims against Respondents that have deliberately engaged in a course of conduct that undermines the public land recording system and is without precedent in the long history of Pennsylvania's recording laws?

*MERSCORP, Inc., v. Delaware County, Recorder of Deeds et. al*, 174 A.3d 549 (Pa. 2017) (per curiam). These issues require statutory interpretation, and are thus pure questions of law. Accordingly, our standard of review is *de novo* and our scope of review is plenary. *Schappell v. Motorists Mut. Ins. Co.*, 934 A.2d 1184, 1187 (Pa. 2007). In such cases, we must ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. §1921(a). We are cognizant that, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* §1921(b). Moreover, we presume the General Assembly did not intend a result that is "absurd, unreasonable, or impossible to execute." *In re Concord Twp. Voters*, 119 A.3d 335, 341-42 (Pa. 2015).

---

establish his right to relief." 160 A.3d at 969 (Brobson, J., dissenting), *quoting P.J.S. v. Pa. State Ethics Comm'n*, 669 A.2d 1105, 1108 (Pa. Cmwlth. 1996). Judge Brobson conceded that, while he may ultimately agree with the majority on the merits of the case, a "whiff of doubt" remained such that he would permit the case to proceed past the pleading stage before rendering a final judgment. *Id.*

We turn first to the Recorders' argument Section 351 mandates the recording of all conveyances, including all mortgages and mortgage assignments. The Recorders emphasize the plain language of Section 351, which provides "all . . . conveyances . . . **shall be recorded** in the [appropriate county] office for the recording of deeds." Appellants' Brief at 19, *citing* 21 P.S. §351 (emphasis added). The Recorders observe Pennsylvania adheres to the "title theory" of mortgages, which "deems a mortgage to be a conveyance." *Id.* at 21, *citing Pines v. Farrell*, 848 A.2d 94, 99 (Pa. 2004) (mortgage assignments are "conveyances" for purposes of Pennsylvania's recording acts). The Recorders submit the Commonwealth Court's decision incorrectly permits a decoupling of the mortgage from the note to evade recording requirements, undermining and eroding the need for public recording in the Counties, contrary to the clear language of Section 351. The Recorders assert the court's interpretation rewrites Section 351 as an optional procedure rather than a requirement, *i.e.*, if one chooses to record a conveyance, Section 351 merely provides the manner for doing so. *See* Appellants' Reply Brief at 7.

Additionally, the Recorders rely on the history of recording statutes to support their argument the General Assembly's use of the word "shall" should be read to mandate recording in the Counties in every instance. The Recorders observe a system for local recording of land transfers was established in 1715, and once that local system was established, the General Assembly amended the law to mandate recording of deeds, conveyances, and mortgages in the country recorder's office within six months of execution. *See* Appellants' Brief at 22, *citing* Act of March 18, 1775, 1 Sm. L. 422 (App. 13) (the Enrollment Act). The Recorders also refer to the General Assembly's enactment of additional legislation in 1841 (Section 441) which required the recording of all deeds or

conveyances which were executed before the 1775 mandate came into effect. *Id.* at 23, *quoting* 21 P.S. §441 ("It shall be the duty of all persons who claim any lands . . . in this commonwealth . . . bearing date previously to the act of 18th March 1775 . . . to have the same recorded, in the proper county, in the manner now provided by law *. . .*"). The Recorders thus conclude the General Assembly has historically required the recording of all conveyances (which would include the mortgages and mortgage assignments at issue here) in the Counties, and the Commonwealth Court's contrary interpretation of Section 351 that allows filing in the MERS® System only runs afoul of this clear statutory mandate. *See Id.* at 23-24.

The Recorders find further support for their position in Section 356 of Title 21, which provides an interest in real property "shall be recorded in the office for the recording of deeds in the county or counties wherein such real properly is situate." *Id.* at 24, *quoting* 21 P.S. §356. The Recorders assert Section 351 and 356 are related and must be read *in pari materia*, leading to the inevitable conclusion that Section 351 provides a mandatory duty to record all conveyances, including the mortgages and assignments at issue here. The Recorders argue the Commonwealth Court's finding Section 351 to be "optional" and "discretionary" while Section 356 is mandatory, leads to an absurd result, and runs afoul of the rules of statutory construction. *Id.* at 25*, citing* 1 Pa.C.S. §1922(1) ("the General Assembly does not intend a result that is absurd . . ."). The Recorders further observe an examination of the recording statutes reveals many other statutes which are expressly

permissive on their face, and distinguishes them from the mandatory language in Section 351.[5]

In light of the above, the Recorders argue the Commonwealth Court disregarded both the history of Pennsylvania's recording statutes and the public policy that mortgages and mortgage assignments be recorded in the public record. The Recorders assert that, in order to give effect to all the provisions in Section 351, the word "shall" cannot be read as merely permissive. The Recorders further allege the Commonwealth Court improperly conflated the question of whether unrecorded transfers of property are enforceable with the more pertinent question of whether Section 351 provides a mandatory recording

---

[5] Appellants' Brief at 25-26, *citing* 21 P.S. §383 ("deeds of county commissioners . . . **may** be recorded in the office for recording deeds"); 21 P.S. §384 (letters of attorney authorizing contracts to be made "**may** be placed of record in the recorder of deeds office"); 21 P.S. § 385 (patents granted by the Commonwealth "**may** be recorded in the office for recording deeds"); 21 P.S §386 (releases for satisfaction "**may** . . . be recorded in the office for recording of deeds"); 21 P.S. §390 (deeds and patents granted by the Commonwealth "**may** be recorded in the office for recording of deeds"); 21 P.S. § 391 (releases and contracts by married women "**may** be recorded in the office for recording deeds"); 21 P.S. § 404 (any lease or sublease "**may** . . . be recorded in the office for the recording of deeds"); 21 P.S. § 451 (affidavit which "may affect title to real estate . . . **may** be recorded") (emphases added). The Recorders thus conclude the General Assembly created a recording scheme which requires core documents transferring lands — including mortgage assignments — to be recorded in the Counties in order to provide a complete chain of title. *Id.* at 27.

The Recorders also counter MERSCORP's reliance on Section 623, 21 P.S. §623 (repealed), which once provided a mortgage assignment **may** be recorded, for the opposite proposition. The Recorders advise Section 623 was passed by the General Assembly only to clarify inconsistent caselaw and reinforce the rule that mortgage assignments fall within the scope of Pennsylvania's recording acts and could be recorded to provide constructive notice of the assignment. *See* Appellants' Reply Brief at 14.

requirement. The Recorders submit whether an unrecorded instrument may be enforced is irrelevant to the interpretation of Section 351, which explicitly requires recording.[6]

MERSCORP asserts the Commonwealth Court properly held Pennsylvania law does not impose a mandatory duty to record mortgages or mortgage assignments. MERSCORP observes in the 300 years the recording statutes have been in effect, they have never been interpreted to mandate recording, and this Court has specifically held "the language of the Acts of Assembly providing for recording of written instruments has not generally been mandatory. . . . It is optional whether or not to record." Appellees' Brief at 15, *quoting Appeal of Pepper*, 77 Pa. 373, 377 (1875); *see also Fisher v. Knox,* 13 Pa. 622, 626 (1850) ("the grantee was not bound by the recording acts to [record] his deed" and "no law requires such an assignment to be*"* recorded); *Mott v. Clark*, 9 Pa. 399, 406 (1848) ("assignee is not bound to [record] his assignment*,* and is in no default"). *See also id.* at 16, *citing Montgomery Cty.* 795 F.3d at 377, n.4 ("There are . . . decisions of

---

[6] Amicus Curiae Briefs were filed in support of the Recorders by: (1) Pennsylvania Legal Aid Network, Legal Aid of Southeastern Pennsylvania, MidPenn Legal Services, National Association of Consumer Advocates National Consumer Law Center and the Consumer Credit Counseling Service of Delaware Valley (collectively the "Public Interest Organizations"); (2) AFSCME Counsel 13 ("AFSCME"); and (3) County Commissioner's Association of Pennsylvania, Pennsylvania Recorder of Deeds Association, and the National Association of Independent Land Title Agencies (collectively the "County Commissioners"). The Amici all challenge the MERS® System as contrary to the underlying principles pivotal to Pennsylvania's recording system and seek reversal of the Commonwealth Court's decision. *See* Public Interest Organizations Amicus Brief at 14-22 (MERS® System improperly circumvents public recordation system, is subject to fraud, and prevents homeowners from having access to chain of title); *see also* AFSCME's Amicus Brief at 4-12 (MERS® System disregards purpose behind Pennsylvania's recordation system to make purchase and sale of land easily obtainable, creates potential for fraud in ownership of real property and forfeits revenue due to Commonwealth in form of fees required to be paid as part of mortgage transfer); County Commissioners' Amicus Brief at 13-18 (MERS® System is caustic to Pennsylvania's recording system which serves public at large, as it creates unclear chains of title, hampering rights of property owners).

Pennsylvania Courts referring to recording as 'optional' and 'not obligatory.'"). MERSCORP avers the Commonwealth Court properly followed this 300 year-old precedent and the Recorders fail to provide any reason to depart from the settled law.

MERSCORP also challenges the Recorders' interpretation of Section 351 that the phrase "shall be recorded" creates a mandatory duty as being taken out of context. According to MERSCORP, the plain text, history, and purpose of Section 351 all indicate the General Assembly never intended to require recording, and the phrase "shall be recorded" serves only to dictate the place where an instrument should be recorded if it is recorded, and also inform property owners of the steps to be taken to safeguard their interests. MERSCORP further notes Section 351 itself does not state that a failure to record is a violation of the statute. *See Id*. at 18-19, *quoting Montgomery Cty.* 795 F.3d at 376-77. MERSCORP further notes Section 351 does not signal a legislative intent to impose a duty to record by, for example, specifying when the document must be recorded or any penalties for a failure to record. *Id.* at 19.

MERSCORP submits the General Assembly is clear when indicating recording is mandatory, as demonstrated by Section 682 of Title 21, which plainly specifies: (1) the party who must record the lien release: the mortgagee; (2) the time frame for recording: 45 days after request and tender of the loan balance; and (3) the penalty for failure to record: for every offense, the mortgagee must pay to aggrieved parties any sum not exceeding the mortgage-money. *Id.* at 20. MERSCORP notes Section 351 does not contain any of the above elements. Rather, MERSCORP emphasizes, the sole consequence for failure to record is contained in Section 351: a failure to record results only in the transfer or conveyance being rendered "void as to any subsequent bona fide

purchaser." *Id.* at 21, *citing Montgomery Cty.*, 795 F.3d at 376. MERSCORP thus submits the plain language of Section 351 anticipates some parties many not record, and provides the clear consequence for failure to record.

MERSCORP also challenges the Recorders' reliance on Section 356 to support a mandatory duty to record, and distinguishes Section 356 as addressing agreements related to the rights and privileges pertaining to real property rather than mortgages or mortgage assignments.[7] MERSCORP observes Section 356 does not mandate recording but, like Section 351, sets forth the manner of recording a conveyance, *i.e.* "in the office for the recording of deeds," should one wish to do so. MERSCORP argues the purpose of Section 351 is "to give subsequent purchasers constructive notice of the mortgage," *see id.* at 24, *quoting First Citizens Nat'l Bank v. Sherwood*, 879 A.2d 178, 181 (Pa. 2005), not to provide a revenue-generating tool for county recorders. *Id.* at 25.

MERSCORP also observes Section 351 once coexisted with 21 P.S. §623 (repealed in 1998), which explicitly provided that recording mortgage assignments was optional. *See* 21 P.S. §623 ("All assignments of mortgages . . . duly executed and acknowledged in the manner provided by law for the acknowledgement of deeds, **may be recorded in the office for the recording of deeds**. . . .) (emphasis added). MERSCORP submits the General Assembly would not have enacted Section 351 in 1925

---

[7] Section 356 applies to "agreements in writing relating to real property . . . by the terms whereof the parties executing the same do grant, bargain, sell, or convey any rights or privileges of a permanent nature pertaining to such real property . . ." 21 P.S. §356. *See, e.g.*, *Sabella v. Appalachian Dev. Corp.*, 103 A.3d 83, 104 (Pa. Super. 2014) (subsequent purchasers were not good-faith purchasers of oil, gas and mineral rights due to prior tax sale purchaser's recording of acquisition of those rights). Furthermore, Section 356 does not encompass mortgages or mortgage transfers because "a mortgage is not of a permanent nature — it is a document encumbering a property until a specified debt is repaid." *First Citizens Nat. Bank v. Sherwood*, 879 A.2d 178, 183 (Pa. 2005).

to mandate recording of mortgage transfers when Section 623 had been in effect since 1849, and specifically provided recording of assignments was optional. Appellees' Brief at 28. Finally, MERSCORP relies on long-standing Pennsylvania jurisprudence which acknowledges recording is not necessary to effect a valid conveyance of property interests. *See id.* at 33, *citing Fiore v. Fiore*, 174 A.2d 858, 859 (Pa. 1961) ("The recording of the deed was not essential to its validity or the transition of the title.").[8]

Our disposition of this appeal depends upon our interpretation of Section 351. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. §1921(a). The Recorders submit the use of

---

[8] Amicus Briefs in support of MERSCORP were filed by: (1) The Federal Home Loan Mortgage Corporation and the Federal National Mortgage Association ("Freddie Mac" and "Fannie Mae"); (2) Pennsylvania Land Title Association ("PLTA"); and (3) Pennsylvania Bankers Association ("Bankers"). The Amici in support of MERSCORP all submit similar arguments which catalogue the benefits of the MERS® System, and caution a reversal of the Commonwealth Court's decision will have far-reaching consequences to the secondary market for residential mortgages, which will ultimately harm residential homeowners. *See* Freddie Mac and Fannie Mae's Amicus Brief at 17-23 (MERS® System lessens errors in recording offices, is fraud-prevention tool); *see also* PLTA's Amicus Brief at 3-5 (operation of MERS® System has significantly reduced errors in chain of title); *see also* Bankers' Amicus Brief at 2-3 (MERS® System brings efficiency and accuracy to increasingly complex mortgage-banking system, benefitting lenders and helping consumers). In addition, the PLTA notes that while it requires its members to record instruments for transactions they are insuring, the reason is not due to Section 351's requirements, but rather because recording is necessary to obtain bona fide purchaser/mortgage status for their insureds, thereby minimizing losses. PLTA further submits it is clear recording is not mandatory due to the myriad Pennsylvania cases that provide recording is not necessary to pass title to property. *See* PLTA's Amicus Brief at 7-12. The Bankers also aver under the MERS® system, the promissory note, which is personal property paid to the bearer of the note, is transferred between MERS members, while the mortgage remains assigned to MERSCORP. The Bankers assert there is not, and never has been, any requirement to publicly record a note's priority. *See* Bankers' Amicus Brief at 4. The Bankers further assert the plain language of Section 351 refers to recording conveyances of land, not notes, and thus the transfers that occur in the MERS® System are not required to be recorded under Section 351. *Id.* at 12

"shall" in Section 351 creates a mandatory duty to record while MERSCORP argues a plain reading of the statute as a whole makes clear there is no mandatory requirement. Although the former interpretation easily arises from reading the words "shall be recorded" in isolation, we must "read them with reference to the context in which they appear." *A.S. v. Pennsylvania State Police*, 143 A.3d 896, 906 (Pa. 2016), *quoting Roethlein v. Portnoff Law. Assoc.*, 81 A.3d 816, 822 (Pa. 2013). "[S]tatutory language must be read in context, that is, in ascertaining legislative intent, every portion of statutory language is to be read 'together and in conjunction' with the remaining statutory language, 'and construed with reference to the entire statute' as a whole." *Com. v. Office of Open Records*, 103 A.3d 1276, 1285 (Pa. 2014), *quoting Board of Revision of Taxes, City of Philadelphia v. City of Philadelphia*, 4 A.3d 610, 622 (Pa. 2010). *See also Yates v. United States*, — U.S. —, 135 S.Ct. 1074, 1081-82 (2015) ("Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words. . . . Ordinarily, a word's usage accords with its dictionary definition. In law as in life, however, the same words, placed in different contexts, sometimes mean different things.") (internal citations omitted).

This contextual approach is particularly instructive when the meaning of statutory terms is ambiguous. "Notwithstanding the general rule that 'shall' is mandatory, we are aware that the word 'shall' has also been interpreted to mean 'may' or as being merely directory as opposed to mandatory." *Gardner v. W.C.A.B. (Genesis Health Ventures)*, 888 A.2d 758, 764-65 (Pa. 2005), *citing Oberneder v. Link Computer Corp.*, 696 A.2d 148, 150 (Pa. 1997), *Commonwealth v. Baker*, 690 A.2d 164, 167 (Pa. 1997), *see also Commonwealth ex rel. Bell v. Powell*, 94 A. 746, 748 (Pa. 1915) (interpreting "shall" as

"may"); *Fishkin v. Hi-Acres, Inc.*, 341 A.2d 95, 97-98 (Pa. 1975) (interpreting "shall" to be merely directory as opposed to mandatory). We acknowledge the precise meaning of the word "shall" may be ambiguous in some contexts, and under such circumstances, reference to principles of statutory construction are instructive. *See, e.g.*, 1 Pa.C.S. §1921(c) ("(1) The occasion and necessity for the statute. (2) The circumstances under which it was enacted. (3) The mischief to be remedied. (4) The object to be attained. (5) The former law, if any, including other statutes upon the same or similar subjects. (6) The consequences of a particular interpretation. (7) The contemporaneous legislative history. (8) Legislative and administrative interpretations of such statute."); *see also Chanceford Aviation Properties, LLP v. Chanceford Twp. Bd. of Supervisors*, 923 A.2d 1099, 1104 (Pa. 2007) ("When the context in which 'shall' is used creates ambiguity, this Court has used the factors in [1 Pa.C.S.] §1921(c) to ascertain the legislature's intent.")

"Whether a particular statute is mandatory or directory does not depend upon its form, but upon the intention of the Legislature, to be ascertained from a consideration of the entire act, its nature, its object, and the consequences that would result from construing it one way or the other". *Deibert v. Rhodes*, 140 A. 515, 517 (Pa. 1928); *quoting In re McQuiston's Adoption*, 86 A. 205, 206 (Pa. 1913) (citations omitted). The apparent purpose of Section 351 mirrors the object of Pennsylvania's land recording statutes: to protect subsequent bona fide purchasers by providing notice of conveyances and any other restrictions on land and guarding against a fraudulent title. *See, e.g., Finley v. Glenn*, 154 A. 299 (Pa. 1931) (recording deed provided constructive notice of restrictions to subsequent purchasers); *see also, e.g. Poth v. Anstatt*, 1842 WL 4846, at *2; 4 Watts & Serg. 307, 309 (Pa. 1842) (recording conveyance acts as evidence of

delivery of property as it concerns a subsequent bona fide purchaser); *see also*, *e.g.*

*Salter v. Reed*, 15 Pa. 260, 263 (1850) ("The principle runs through the whole system of

our recording acts, that the object is to give public notice in whom the title resides; so that

no one may be defrauded by deceptious appearance of title."); *Montgomery Cty.*, 795

F.3d at 376 (purpose of Section 351 is not to create mandatory duty to record every

conveyance but to provide instructions for "preserv[ing] the property holder's rights as

against a subsequent bona fide purchaser").

A finding that "shall" is directory and not mandatory is further supported when

considering the consequences of a different interpretation. *See* 1 Pa.C.S. § 1921(c)(6).

Justice Donohue would hold a failure to record a conveyance is a violation of

Pennsylvania law with undefined consequences. *See* Dissenting Opinion slip op. at 28-

29. The express terms of Section 351, however provide the specific, limited,

consequences of failure to record. Section 351 plainly provides "[e]very such deed,

conveyance, contract, or other instrument of writing which shall not be acknowledged or

proved and recorded, as aforesaid, shall be adjudged fraudulent and void **as to any**

**subsequent bona fide purchaser or mortgagee or holder of any judgment** . . .

**without actual or constructive notice** . . ." 21 P.S. §351 (emphasis added). This

emphasized language indicates a conveyance is rendered void only (1) with respect to a

limited class of individuals — subsequent bona fide purchaser or mortgagee or holder of

any judgment; and (2) under limited circumstances — when the subsequent bona fide

purchaser does not have actual or constructive notice of the transfer. We may not ignore

the General Assembly's choice to limit the consequence of invalidity to specific

circumstances. *See* 1 Pa.C.S. 1921(a) (statutes must be interpreted to give effect to

every word);  *see also Holland v. Marcy*, 883 A.2d 449, 455-56 (Pa. 2005) ("In construing a statute, the courts must attempt to give meaning to every word in a statute as we cannot assume that the legislature intended any words to be mere surplusage."); *Allegheny Cty. Sportsmen's League v. Rendell*, 860 A.2d 10, 19 (Pa. 2004) ("Because the legislature is presumed to have intended to avoid mere surplusage, every word, sentence and provision of a statute must be given effect.") (additional citations omitted).[9]

Moreover, we have consistently held a "failure to record [documents demonstrating a conveyance is] not dispositive of whether [the documents] effectuated a valid conveyance." *In re Estate of Plance*, 175 A.3d 249, 266 (Pa. 2017); *see also*, *Morris v. Ziegler*, 71 Pa. 450, 453; 1872 WL 11333, at *3 (Pa. 1872) (finding transfer was ineffective as consequence of bad faith [fraud] and "**not** for simply **not recording** her deed, which in law she was **not bound** to do") (emphasis added); *Appeal of Nice*, 54 Pa. 200, 201, 1867 WL 7443 at *2 (Pa. 1867) ("it has been held that an unrecorded mortgage is not wholly inoperative.  It will avail against the mortgagor himself, or his alienee or mortgagee with notice . . .").  This rule undermines the position that Section 351 mandates recording. *See, e.g., Matter of Pentrack's Estate* 405 A.2d 879, 880 (Pa. 1979) ("Title to real estate

---

[9] To support her position that recording is mandatory, Justice Donohue focuses only on the words "shall be recorded" while dismissing every other word in Section 351 as merely serving to clarify the Commonwealth is a race-notice jurisdiction. *See* Dissenting Opinion, slip op. at 6-7.  Respectfully, this overly technical reading of the statute renders superfluous the language expressly describing the consequence for failure to record — the transfer will be adjudged fraudulent and void — in violation of our interpretive rules. Moreover, Justice Donohue finds the only consequence the General Assembly decided to include in Section 351 is somehow incomplete or deficient, and would permit the Recorders to pursue additional, unarticulated remedies.  *See id.* at 7 n.5, 28-29.  In any event, our reading of Section 351 does not discourage the recording of conveyances. Indeed, we recognize the value of recording, but we find no basis to impose consequences for failure to record beyond what the General Assembly provided.

may be passed by delivery of a deed without recording."); *Fiore v. Fiore,* 174 A.2d 858, 859 (Pa. 1961) ("recording of the deed was not essential to its validity or the transition of the title"). Moreover, this well-established principle is equally applicable to mortgage assignments. *See US Bank N.A. v. Mallory*, 982 A.2d 986, 993 (Pa. Super. 2009) (recorded mortgage assignment is not prerequisite to filing complaint in mortgage foreclosure proceedings).[10]

Furthermore, had the General Assembly intended to treat every unrecorded conveyance as if it never happened, it could have stated this clearly, and without defining a limited consequence for failure to record. *Cf. Clow v. Woods*, 1819 WL 1895, 5 Serg. and Rawle 275 (Pa. 1819) (Opinion in Support of Reversal) ("[I]n the case of lands, where possession is not . . . the legal evidence of title, provision should be made, that unless a mortgage is recorded within six months, it should be void.") Instead, the express terms of Section 351 explain it is **only** those deeds, conveyances and contracts where it is "the intention of the parties . . . to grant, bargain, sell and convey any lands, tenements or hereditaments" to which recording applies, and with respect to those items, failure to record will result in the grant or conveyance being "adjudged fraudulent and void." 21 P.S. §351. The words "shall be recorded" thus provide direction to parties who **intend** to convey land and simultaneously protect the interest created by the conveyance.

---

[10] Justice Donohue and the Recorders rely on the statement in *Appeal of Nice* that "an unrecorded mortgage is a forbidden thing." Appellants' Brief at 31, 39; Dissenting Opinion, slip op. at 28. However, a careful reading of the entire decision demonstrates that, although an unrecorded mortgage does not have the full force of a recorded mortgage to protect a mortgage-creditor, it nevertheless is not rendered void; instead, its priority is adversely affected. The Court specifically held "a debt secured by an unrecorded mortgage . . . has no right to take precedence of the general debts, but must come in for its share as one of them." *Appeal of Nice*, 54 Pa. at 202.

Our recent decision in *Estate of Plance* serves to illustrate this last point. In that case, a grantor prepared deeds to convey property to a trust, under which the grantor would be trustee and his son would be a beneficiary (the 2004 deeds). However, the grantor never recorded the 2004 deeds, despite several requests by his son and advice from counsel. 175 A.3d at 253-54. Instead, two years later, the grantor prepared new deeds to convey the property to himself and his wife and had those new deeds recorded in the counties where the property was located (the 2006 deeds). *Id.* In determining the conveyance effectuated by the 2006 deeds was valid — and the conveyance envisioned by the 2004 deeds was not — we focused on the grantor's decision **not** to record the 2004 deeds as evidence of his lack of intent to convey the subject property to the trust. *Id.* at 266 ("failure to record those deeds suggests that [grantor] lacked the necessary intent to convey the [property], so as to constitute an effective delivery"). *Estate of Plance* presents a scenario — however unusual — where there was no intent to record and thus validate a proposed conveyance.

We also find compelling the Seventh Circuit's decision in *Union Cty., Ill. v. MERSCORP, Inc.*, 735 F.3d 730 (7th Cir. 2013), which involved the substantively similar Illinois recording statute.[11] Judge Posner likened the Illinois statute's provision that deeds

---

[11] Section 28 of the Illinois Conveyances Act provides in pertinent part as follows:

Deeds, mortgages, powers of attorney, and other instruments relating to or affecting the title to real estate in this state, shall be recorded in the county in which such real estate is situated; . . . No deed, mortgage, assignment of mortgage, or other instrument relating to or affecting the title to real estate in this State may include a provision prohibiting the recording of that instrument . . ..

765 ILCS 5/28.

and mortgages "shall be recorded in the county in which such real estate is situated" to a department store's notice that "[a]ll defective products must be returned to the fifth floor counter for a refund." *Union Cty.*, 735 F.3d at 733. Obviously, the store's notice does not mandate a return of all defective products, but if a consumer intends to return such defective product for a refund, he must return it to the fifth floor.[12] *Id.* The Seventh Circuit thus employed an effective analogy to hold the Illinois statute contained an implicit "if," and dictated only that in the event a property owner wished to record a property interest, he must record it in the county where the property is located. *Id.*

Contrary to the Recorders' preferred reading, the words "shall be recorded" in Section 351 must not be read in isolation to require every conveyance (or mortgage or mortgage assignment) be recorded, but rather viewed in context to provide a mortgagee with instructions in the event it intends to safeguard its interest by recording in the county. The process of recording a conveyance, as it has developed in this Commonwealth, is essentially a **service** purchasers and mortgage holders have a right to accept or decline. Although the Recorders emphasize a consequence of MERSCORP's failure to record is

---

[12] Justice Donohue rejects this analogy and presents an alternative. Dissenting Opinion, slip op. at 5-6. However, much like her insistence that we read the words "shall be recorded" in a vacuum that disregards the other elements of Section 351, Justice Donohue's analogy ignores the other terms, conditions and consequences that would naturally exist in a car rental agreement in addition to the directive "[t]he vehicle shall be returned to the location where the rental occurred." *Id.* at 6. Obviously, returning a rented car is not "optional," but, more to the point, there would be additional terms in the rental agreement describing a deadline for return and the consequences for failure to comply, *e.g.*, the car will be reported stolen and reported to the authorities, and these terms clearly underscore that return is actually mandatory and expected. Section 351 provides the directive on how to record a transfer or conveyance of land — in the office of the recorder of deeds in the county where the lands are situate — and the limited consequence for failing to follow the directive — the conveyance can be adjudged fraudulent as to a subsequent bona fide purchaser without actual or constructive notice.

a loss by the Counties of attendant recording fees, there is nothing in Section 351 to support the conclusion that the purpose of recording is revenue generation. Instead, our precedent has long recognized the purpose of recording is to protect the purchaser or mortgage holder's bona fide status and "to give public notice in whom the title resides; so that no one may be defrauded by deceptious [sic] appearance of title." *Salter*, 15 Pa. at 263. *See also First Citizens Nat. Bank v. Sherwood*, 879 A.2d 178, 181 (Pa. 2005) ("legal effect of the recording of a written agreement such as a mortgage is to give subsequent purchasers constructive notice of the mortgage"). Moreover, a failure to record results in a clear consequence — the mortgagee runs the risk of losing its status and being deprived of property rights — and a party that chooses not to record a conveyance or ownership interest pursuant to Section 351 does so at its own peril. An additional penalty for failing to record is beside the point. [13]

---

[13] Nor are we persuaded that, had the General Assembly intended Section 351 recording to be permissive rather than mandatory, it would have used the phrase "may be recorded," as it did elsewhere in Title 21. *Compare* 21 P.S. §356 (agreements concerning real property "shall be recorded") *with* 21 P.S. §§383, 384, 385, 386, 390, 391, 404, 451 (land encumbrances, documentary evidence of encumbrances, and releases of encumbrances, such as deeds and patents of county commissioners and the Commonwealth, letters evidencing conveyances, releases, and lease agreements "may be recorded"). *Cf. Com. v. Garland*, 142 A.2d 14, 17 n.5 (Pa. 1958) (noting "may" can mean same as "shall"); *Bell v. Powell,* 94 A. at 748 ("The word 'shall' in its ordinary sense, is imperative. . . . But the intent of the act controls, and when the spirit and purpose of the act require the word 'shall' to be construed as permissive, it will be done."), *quoting* 2 Sutherland on Stat. Const. (2d Ed., 1094) §640, p. 1155.

For similar reasons, we reject the notion that the use of the term "shall" in other sections of Title 21, specifically, Sections 356, 441, 444 and 621, means recording mortgage assignments is mandatory under Section 351. *See* Dissenting Opinion, slip op. at 12-16. We are not called upon in this case to opine on whether Sections 356, 441, 444 or 621 contain mandatory or directive provisions, but we acknowledge those statutes describe the procedure for effecting a conveyance of property rights and the consequences for failing to follow that procedure — *i.e.* the purported conveyance may be rendered invalid. *See, e.g.* 21 P.S. §356 (parties "shall" record agreement regarding conveyance of

Our conclusion is further buttressed by the fact the General Assembly did not provide any language to enable or authorize enforcement by anyone, let alone the Recorders. Nor does the statute provide any other enforcement details, such as a deadline for recording or the penalties for failure to record in a timely fashion. We thus reject the Recorders' invitation that we read additional provisions into a statute where they were not provided by the General Assembly. *See, e.g. Commonwealth v. Vasquez*, 753 A.2d 807, 811 (Pa. 2000) ("we can not [sic] read into the statute a requirement that is not present"). The Commonwealth Court thus correctly held Section 351 does not impose a mandatory duty to record and we affirm that holding. *See also Montgomery Cty.*, 795

property for parties to effectuate a "grant, bargain, [sale], or convey[ance of] any rights or privileges"); 21 P.S. §441 (providing it is "duty" of persons claiming ownership of deeds or conveyances prior to March 18, 1775 to have same recorded within two years to claim subject land); *see also, e.g.* 21 P.S. §444 (providing deeds and conveyances after passage of act to be recorded within 90 days, or be adjudged fraudulent); *see also, e.g.,* 21 P.S. §621 (requiring mortgages to be recorded within six months, or deed will not be "good or sufficient to convey or pass" interest). Nevertheless, our analysis reveals "shall" as used in Section 351 does not mandate recording, and this finding is supported rather than undermined by *A. Scott Enterprises, Inc. v. City of Allentown*, 142 A.3d 779 (Pa. 2016), cited by the dissent. The sentence partially quoted by Justice Donohue actually provides in full: "The General Assembly's use of the word 'shall' in provisions in [the Contractor and Subcontractor Payment Act] which are otherwise functionally equivalent to the terms of the Procurement Code suggests a deliberate intention that awards of penalties and attorney fees under the Procurement Code are within the discretion of the tribunal." *Id.* at 788-89. Although we ultimately determined the term "may" permitted rather than required an award, we did so after careful analysis, rather than automatically holding the use of "may" can never describe a mandate. Similarly, the use of the word "shall" does not automatically mean the statute creates a mandate. *See, e.g., In re Farnese*, 17 A.3d 357, 370-71 (Pa. 2011) (Election Code provision stating court "shall" award costs as it "shall" deem just does not entitle prevailing party to automatic award; language "contemplates a more nuanced, calibrated decision, perhaps difficult, but not at all a strange matter for courts of justice.").

F.3d at 378 (concluding Section 351 imposes no duty to record all land conveyances in county recorder's office).

We now turn to the second question we accepted for review — whether the Recorders have the authority to pursue claims to enforce compliance with Section 351. The Recorders argue they may bring actions to enforce statutory provisions under their purview, and the Commonwealth Court erred in holding they do not. *See* Appellants' Brief at 40-41, *quoting Com., Pennsylvania Game Comm'n v. Com., Dept. of Envtl. Res.*, 555 A.2d 812, 815 (Pa. 1989) ("[U]nless the legislature has provided otherwise, such an agency has an implicit power to be a litigant in matters touching upon its concerns."), *and citing Robinson Twp., Washington Cty. v. Com.*, 83 A.3d 901, 920-21 (Pa. 2013) (municipalities may litigate claims as part of their "responsibilities to protect the quality of life of [their] citizens"). The Recorders emphasize the General Assembly provided them with the authority to appoint a solicitor to pursue such claims. Appellants' Brief at 46, *citing* 16 P.S. §4313.1 ("The recorder of deeds may appoint one person . . . as his solicitor . . . [who] shall conduct any litigation in connection with the recorder of deeds office when requested to do so by the recorder of deeds.").

Even assuming the Recorders correctly argue they have authority to pursue actions against individuals or entities that do not comply with mandatory duties within their statutory purview, our holding that Section 351 does not provide a mandatory duty to record renders review of this issue unnecessary.[14]

---

[14] As we have stated in text, *supra*, Section 351 does not expressly authorize a right of action by county recorders. Moreover, our review reveals no support for a finding of implied authority, which may be recognized — at least in the context of litigation by private parties — only when: (1) the plaintiff is part of a class for whose "especial" benefit the

Accordingly, we affirm the order of the Commonwealth Court, which reversed the

common pleas court's decision to overrule MERSCORP's preliminary objections in the

<hr>

statute was enacted; (2) there is an indication of legislative intent to create or deny a remedy; and (3) an implied cause of action is consistent with the underlying purpose of the legislative scheme. *See Estate of Witthoeft v. Kiskaddon*, 733 A.2d 623, 626 (Pa. 1999), *quoting Cort v. Ash*, 422 U.S. 66, 78 (1975). We discern none of these elements in the terms of Section 351, particularly since Section 351 does not expressly mandate recording. *See, e.g., Commissioner v. Beam*, 788 A.2d 357, 359, 360 (Pa. 2002) (agency is invested with implied authority to effectuate express mandates provided by General Assembly).

The dissent's opposite view is unsupported by the terms of the statute. *See* Dissenting Opinion, slip op. at 25-26. Beyond describing the ministerial duty of the Recorders to maintain those documents **presented** to them, Section 351 provides no parameters whatsoever for the implicit right of action the dissent would create. The statute presents no time frame for action, nor does it suggest what form the remedy might take. The dissent would thus provide unrestricted enforcement authority to the Recorders, whose statutory role is quite limited. *See Woodward v. Bowers*, 630 F.Supp. 1205, 1207 (M.D. Pa. 1986), *quoting County Auditors of McKean Cty. v. Anderson*, 3 A.2d 28, 30 (Pa. Super. 1938) (additional citations omitted) ("In Pennsylvania, the Recorder of Deeds is 'merely the custodian' of documents placed into the record by members of the public. The Recorder neither approves of nor rejects the contents of the documents, or their validity."). As a practical matter, the imagined enforcement action would immediately be subject to successful defenses based, for example, on the absence of a prescribed deadline for recording, or identification of which party has the duty to record.

When taken to its logical extreme, the dissenting position that the Recorders are endowed with an implied authority to enforce Section 351 might eliminate a grantor's ability to effectuate — or not — a proposed conveyance of property. Relying on the Recorders' duty "to receive all deeds presented for record . . . and record the same," the dissent extrapolates they must have a corresponding "authority to institute judicial proceedings as required." Dissenting slip op. at 28. Consider, then, the grantor's decision in *Estate of Plance* not to record the 2004 deeds: under the dissent's broad grant of authority, the grantor's son might theoretically deputize a recorder to act as his agent and file a mandamus action to compel recording of those deeds. This admittedly extreme example plainly demonstrates why we should not imply enforcement authority where the General Assembly did not expressly provide it in Section 351. Even a declaratory judgment action — which Justice Donohue suggests as the appropriate vehicle for the Recorders' enforcement activities (Dissenting Opinion slip. op. at 28-29) — would improperly expand the limited duty to maintain and record presented documents that was expressly assigned to the Recorders by statute.

nature of a demurrer. The matter is remanded for proceedings consistent with this opinion, including entry of judgment in favor of MERSCORP.

Jurisdiction relinquished.

Chief Justice Saylor and Justice Wecht join the opinion.

Justice Donohue files a dissenting opinion.

Justices Baer, Todd and Mundy did not participate in the consideration or decision in this case.